# Constitutionality of Federal Habitual Offender Legislation

Provisions of proposed "habitual offender" legislation would be within Congress' power under the Commerce Clause even though they may penalize activities which are entirely intrastate, if Congress has a rational basis for finding that these activities have some effect on interstate commerce.

November 13, 1981

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION

This responds to your request for our views regarding the power of Congress to enact S. 1688. We will examine other constitutional implications of S. 1688 at a later date.

Section 2118(a) of S. 1688 (97th Cong., 1st Sess.) provides:

> Whoever commits, conspires, or attempts to commit a robbery or a burglary in violation of the felony statutes of a State or of the United States while using, threatening to use, displaying or possessing a firearm, after having been twice convicted of a robbery or a burglary in violation of the felony statutes of a State or the United States is a career criminal and upon conviction shall be sentenced to imprisonment for life.

The bill further provides that defendants accused under this provision shall be admitted to bail "only as provided in capital cases" and that sentences under this provision shall not be suspended. It requires that trials occur and appeals be decided within 60 days. Additionally, section 4 contains an expression of congressional intent that the federal government ordinarily defer to state prosecution, but that "if the Attorney General or a United States Attorney, in consultation with appropriate State or local officials, determines that there is a significant Federal interest in the case and the State authorities are unlikely to secure a sentence of imprisonment for life, then Federal prosecution may be brought."

At the outset, we would observe that the bill might be read to impose its substantive requirements on the states in the course of their conduct of state prosecution. Such an interpretation raises serious Tenth Amendment concerns. See *National League of Cities* v. *Usery,* 426 U.S. 833, 855 (1976). Although we read the bill as proposing only establish-

ment of a federal offense, to be decided in the federal courts and having no impact on the right of the states to enforce their own criminal laws, we recommend that the language of the bill be made less ambiguous in this regard.

If Congress has the power to legislate as it proposes in S. 1688, that power is derived from the Commerce Clause, which permits Congress to "regulate Commerce . . . among the several States." U.S. Const., Art. I, § 8, cl. 3. The clause grants the power to regulate not only the channels and instrumentalities of interstate commerce, but also those activities having an effect on interstate commerce. *Perez* v. *United States,* 402 U.S. 146, 150 (1971). Because S. 1688 does not contain a specific interstate commerce nexus as an element of the crime, it falls within the category of legislation regarding activities affecting interstate commerce.

Congress has often legislated in the criminal field by specifically prohibiting activities that occur in interstate commerce, but it also has legislated without requiring that a connection with interstate commerce be proved as an element of every crime. *See, e.g.,* 18 U.S.C. § 922(b), 1955. Its power to do so derives from a long line of cases holding that even purely intrastate activity may be regulated, where that activity "combined with like conduct by others similarly situated, affects commerce among the states. . . ." *National League of Cities* v. *Usery,* 426 U.S. 833, 840 (1976), *quoting Fry* v. *United States,* 421 U.S. 542, 547 (1975). *See, e.g., Wickard* v. *Filburn,* 317 U.S. 111 (1942).

Thus, Title II of the Consumer Credit Protection Act, which prohibits "extortionate credit transactions" or "loan-sharking," has been declared constitutional by the Supreme Court. *Perez* v. *United States,* 402 U.S. 146 (1971). In so holding, the Court noted that "[e]xtortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce." 402 U.S. at 154. In considering Title II, Congress had received extensive testimony about the connection between loan-sharking and interstate organized crime. It made specific findings as to this connection and further found that "[e]xtortionate credit transactions are carried on to a substantial extent in interstate and foreign commerce and through the means and instrumentalities of such commerce. Even where extortionate credit transactions are purely intrastate in character, they nevertheless directly affect interstate and foreign commerce." 402 U.S. at 147 n.1.

Similarly, Congress enacted 18 U.S.C. § 1955, which makes it a federal offense to conduct, finance, manage, supervise, direct, or own a gambling business that: (1) is in violation of state or local law; (2) involves five or more persons; and (3) has operated for more than 30 days or takes in at least $2,000 per day. This statute has been upheld repeatedly as within Congress' power under the Commerce Clause. *See, e.g., United States* v. *Kail,* 612 F.2d 443, 449 (9th Cir. 1979), *cert. denied,*

445 U.S. 969 (1980); *United States* v. *Abramson,* 553 F.2d 1164, 1173 (8th Cir.), *cert. denied,* 433 U.S. 911 (1977); *United States* v. *Sacco,* 491 F.2d 995, 999–1001 (9th Cir. 1974) (*en banc*); *United States* v. *Harris,* 460 F.2d 1041, 1044–46 (5th Cir.), *cert. denied,* 409 U.S. 877 (1972). In considering the constitutionality of § 1955, the courts have applied the accepted test for determining whether Congress acted within its powers in prohibiting an entire class of activities as having an undesirable effect on interstate commerce: (1) "Whether Congress had a rational basis for finding that [the activity] affected commerce, and (2) if it had such a basis, whether the means it selected to eliminate that evil are reasonable and appropriate." *Heart of Atlanta Motel, Inc.* v. *United States,* 379 U.S. 241, 258–59 (1964); *Sacco,* 491 F.2d at 999. The legislative history of § 1955, like that of Title II, revealed specific congressional findings about the connections between illegal gambling and organized crime and interstate commerce, as well as the need for federal involvement for effective control of the problem. *Sacco,* 491 F.2d at 999.

Congress has also specifically regulated intrastate transactions in firearms, *see* 18 U.S.C. §§ 921–928, "on the theory that such transactions affect interstate commerce." *See Huddleston* v. *United States,* 415 U.S. 814, 833 (1974); *Mandina* v. *United States,* 472 F.2d 1110, 1113–14 (8th Cir.), *cert. denied,* 412 U.S. 907 (1973); *United States* v. *Menna,* 451 F.2d 982, 984 (9th Cir. 1971), *cert. denied,* 405 U.S. 963 (1972). Section 922(d)(1), for example, prohibits the sale of firearms to those under indictment for or convicted of felonies, without a specific requirement that the individual sale be in interstate commerce. This section has been upheld as within Congress' powers under the Commerce Clause. *United States* v. *Nelson,* 458 F.2d 556, 559 (5th Cir. 1972).

As you noted in your October 26, 1981, statement to the Senate Judiciary Committee, it may be a sufficient basis for enacting S. 1688 that "[r]obberies and burglaries of homes, stores, businesses, and travelers directly interfere with interstate commerce by impeding the free flow of goods and people, and by affecting insurance rates, real estate values, and the general cost of operating businesses, among other things." *Career Criminal Life Sentence Act of 1981: Hearings on S. 1688, S. 1689, and S. 1690 Before the Subcomm. on Juvenile Justice of the Senate Comm. on the Judiciary,* 97th Cong., 1st Sess. 21 (1981) (statement of D. Lowell Jensen). On the other hand, this statement may be so generally applicable to state and local crimes as to be unpersuasive as a statement of the basis for enacting S. 1688. Although the courts have emphasized that Congress need not make particularized findings, *Perez,* 402 U.S. at 154; *Sacco,* 491 F.2d at 1000, the statutes discussed above have contained clear statements of the federal interest involved (in the statute or the legislative history), and it is uncertain how far the

commerce power extends without such specific congressional consideration.[1]

Although we believe that the broad powers granted to Congress under the Commerce Clause would permit legislation like S. 1688 on the proper record, we are unable to say that S. 1688 would be considered within Congress' powers if the statute or its history is silent on this matter, or if Congress' asserted interest is one generally applicable to all crimes. While the commerce power is broad, it is not limitless. We do not believe that S. 1688, on its face, provides as certain a basis for congressional action as the three statutes discussed above. Therefore, while they provide support for enacting S. 1688, they do not decide the constitutional question definitively.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[1] In determining whether Congress acted withm its powers under the Commerce Clause, some cases have emphasized Congress' perception that existing state control was inadequate. *See, e.g., United States v. O'Neill,* 467, F.2d 1372 (2d Cir. 1972). Although we do not believe that state inadequacy in a particular area is a requirement for Congress to legislate under the Commerce Clause, a congressional determination that state efforts are inadequate would not be unhelpful.