**In re Robert D. CHURCHFIELD d/b/a
Currently Wiring, Debtor.**

**Bankruptcy No. 82–00755.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

Sept. 2, 1986.

Kenneth W. Kable, Saginaw, Mich., for debtor.

Michael J. Hluchaniuk, Bay City, Mich., David H. Dickieson, Asst. U.S. Attys.

### AMENDED MEMORANDUM OPINION RE: IRS' MOTION FOR RECONSIDERATION

ARTHUR J. SPECTOR, Bankruptcy Judge.

On June 16, 1986, 62 B.R. 399, the Court entered its Memorandum Opinion which held that the IRS was not entitled to interest on its pre-petition lien claim in this Chapter 11 case. The concluding sentence directed that "upon submission, an order consistent with this opinion will be entered." The successful debtor has to this date still not submitted an order disallowing the IRS' claim for such interest.[1] In the interim, on August 22, 1986, the IRS filed a motion for reconsideration of the earlier opinion.

Rule 17(m) of the Local Rules of the United States District Court for the Eastern District of Michigan fixes a 10 day period after the entry of a judgment or order for the filing of a motion for rehearing or reconsideration. Obviously, since the debtor never got around to submitting an order for entry, the 10–day period has not even commenced to run. Therefore, the IRS' motion for reconsideration is timely.

The rule further provides, however, that Motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the Court and the parties have been misled, but also show that a different dispo-

---

1. Instead, 11 days later, the debtor's attorney submitted an application for allowance of his fees and a month later amended the debtor's disclosure statement and plan.

sition of the case must result from a correction thereof.

We think the motion fails to state sufficient grounds under this subrule.

The government argues that reconsideration is mandated because "[t]welve [2] days after this Court issued the ... opinion, Judge Horace W. Gilmore, District Court Judge for the Eastern District of Michigan, entered a judgment in the case, *In re Ron Pair Enterprises*, Civ. No. 85–CV–75680 (E.D.Mich. June 30, 1986) [Available on WESTLAW, DCTU database].... That judgment is fundamentally inconsistent with this Court's holding ... [and this Court is] compelled under the doctrine of *stare decisis* to follow the decisions of the district court." IRS' Memorandum of Law, pp. 1, 2, 4.

■ Since at the time this Court's opinion entered there was no existing decision of a higher court on this issue, *stare decisis* does not require reconsideration. Courts must act on the record and on the state of the law in existence at the time the decision is made. The fact that another court, even a higher court, has since that decision, ruled in a contrary manner, does not mean that the lower court's decision was violative of *stare decisis* when rendered. After all, a "precedent" is something which precedes the decision at bench; one cannot "follow" something which comes later.

■ The government also states that there existed precedent in this circuit, contrary to the holding in this case. It argues that we erroneously failed to address the case of *In re Henzler Mfg. Co.*, 55 B.R. 194 (Bankr.N.D. Ohio 1985), in our prior opinion, and that this fact justifies reconsideration. The case cited was a decision of a bankruptcy judge in Ohio. Although we are chagrined to learn that our research failed to turn up this published opinion so close to home, the case is of no precedential value. Although well-written, the opinion was merely cumulative of the conceded majority of other reported decisions which held in a similar manner, and with which we expressly disagreed in our previous opinion.[3] Therefore, our failure to address it is not a grounds for reconsideration. Furthermore, had the government wished to rely on that decision, it should have cited it prior to the determination of the issue, not afterward. In doing so afterward, the government runs afoul of the provision in Local Rule 17(m) which specifically states that motions for reconsideration which merely present the same issues ruled upon by the Court will not be granted. Furthermore, the Court's failure to address a specific, non-precedential opinion, when other like decisions were expressly disavowed, does not demonstrate a "palpable defect" by which the Court or the parties have been misled. Therefore, the failure to address the *Henzler* opinion is not a ground for reconsideration.

■ Finally, the government maintains that our failure to cite and follow *dictum* in *In re Colegrove*, 771 F.2d 119 (6th Cir.1985) was error which justifies reconsideration. Although a trial court should give great weight to statements made by its circuit's court of appeals, even if not in a holding, *In re Jones*, 18 B.R. 161 (Bankr.D.Okla.1982), the *dictum* alleged to compel a decision in the IRS' favor addresses facts so far from those in this case that it was not worthy of comment. In *Colegrove*, a Chapter 13 case dealing with the questions of whether a debtor was required to pay interest on the pre-petition arrearage due under a pre-petition home mortgage and if so, how much, the court of appeals *held* that interest was due and at the lower of the contract or the market rate. It *stated* in passing that 11 U.S.C. § 506(b) "provides for interest on all allowed secured claims where the value of the security is greater than the claim." *Id.*, 771 F.2d at 122. With all due respect, we do not believe that the issue in this case

---

**2.** Since our opinion was entered June 16, and Judge Gilmore's opinion was entered on June 30, it would appear that Judge Gilmore's opinion was issued fourteen, not "twelve", days later.

**3.** In fact, since our decision yet another case has been reported which holds with the majority. *See In re Russo*, Bankr. Law Rptr. ¶ 71,256 (Bankr.D.Mass.1986).

can be dealt with in so cavalier a fashion. It has been an easily-stated rule of thumb that a creditor who possesses a claim secured by collateral having a value in excess of the debt owing it is entitled to contract interest. That rule of thumb, utilized by the *Colegrove* court, is like most such rules, good for the majority of cases. Under the facts in *Colegrove*, its use, without citation of the exceptions not relevant to that case, was appropriate. But, like most, that rule of thumb has exceptions. The primary exception, we found, is that it does not apply when the creditor has no agreement for the payment of interest. *Colegrove*'s passing *dictum* does not justify reconsideration.

Finally, we take this opportunity to draw support for our *ratio decidendi* in this case: that since, given two major opportunites to do so (in 1978 and in 1984), Congress did not express any dissatisfaction with the case law which had been so substantially developed under the previous Bankruptcy Act, Congress must therefore have intended no change in that law, and therefore that law—that fully secured nonconsensual lien claimants are not entitled to post-petition interest in bankruptcy proceedings—continues in the Code. In the recently decided case of *In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380 (5th Cir.1986), the court held that other circuits' decisions which held that an undersecured creditor was entitled to have its lost "opportunity costs" protected during the pendency of Chapter 11 proceedings (usually by payment of periodic cash payments) were erroneous because they failed to recognize that Congress never expressed an intention to change what was established law to the contrary on that point when it adopted the Bankruptcy Code. It stated:

> Many commentators and courts view the issue before us as one of policy and economics. One side opines that the failure to award postpetition interest payments will restrict the availability of secured credit to the detriment of businesses that cannot obtain credit otherwise.

The other concentrates on the deleterious effects that postpetition interest payments will have on the possibility of reorganizations. It seems that the debate has become not what the Bankruptcy Code requires, but what it should require. If we were Members of Congress, or if bankruptcy law were not controlled by a statute, we might find the economic debate of primary significance. However, as judges, we must be governed by congressional intent as set forth in the Bankruptcy Code. "The relevant question is not whether, as an abstract matter, the rule advocated ... accords with good policy. The question we must consider is whether the policy [advocated] is that which Congress effectuated by its enactment of" the statute at issue...." Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." ... Our role in interpreting statutes is limited: While the judicial function in construing legislation is not a mechanical process from which judgment is excluded, it is nevertheless very different from the legislative function. Construction is not legislation and must avoid "that retrospective expansion of meaning which properly deserves the stigma of judicial legislation."....[4] To blur the distinctive functions of the legislative and the judicial processes is not conducive to responsible legislation.

*Id.* at 1384 (citations omitted).

Like the *Timbers of Inwood Forest* court, we too "are properly reluctant to place significant weight on the unexplained action" of the Congress when it placed a comma after the phrase "interest on such claim" in 11 U.S.C. § 506(b). *Id.* at 1400. In *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981), the Supreme Court

> ... construed an amendment to a statute that was effected without explanation. The plain meaning of the amendment would have sharply altered existing law. The Court determined that Congress' "si-

---

**4.** *Also see In re Delbridge*, 61 B.R. 484, 489 (" ... policy-based decision making, if defensible at all, is even less so where it is unnecessary.")

lence" on the change was suggestive because "Congress might be expected to have mentioned a change wrought through the amendment which would" effect a major change in the law. It added that although "[t]he silence of Congress may provide a treacherous guide to its intent[,] ..." it would be "almost inconceivable that Congress knowingly would have changed substantially a long-standing formula ... without a word of comment."

*In re Timbers of Inwood Forest Assoc., Ltd., supra,* 793 F.2d at 1400–01, n. 37. (citations omitted). *Also see Midlantic Nat'l Bank v. New Jersey,* —— U.S. ——, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept it makes that intent specific."). These comments, we noted, are especially true when the matter at hand so closely involves the federal fisc.

For all of these reasons, we deny the government's motion for reconsideration and will, this time, draft and enter our own orders consistent with the first, and now this, opinion.