In re Nels William NIELSEN and Amy G. Nielsen, Debtors.

Bankruptcy No. 87–20281–DPM.

United States Bankruptcy Court, E.D. Missouri, N.D.

June 2, 1988.

Robert M. Clayton, II, Hannibal, Mo., for debtors.

Joseph D. Welch, Hannibal, Mo., for Robert and Mildred Starr.

Fredrich J. Cruse, Hannibal, Mo., Trustee.

Nancy S. Anstaett, Lenexa, Kan., for J.I. Case Credit Corp.

Clifford H. Ahrens, Hannibal, Mo., for Federal Land Bank.

Austin Parham, Hannibal, Mo., for First Bank of Montgomery County.

Paul H. Berens, Cape Girardeau, Mo., for John Deere Co.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

## INTRODUCTION

Nels and Amy Nielsen are family farmers who filed for bankruptcy pursuant to Chapter 12 of the United States Bankruptcy Code on September 1, 1987. They filed their original Chapter 12 Plan on November 30, 1987 and subsequently filed a First Amended Plan and Second Amended Plan on January 21, 1988 and February 10, 1988, respectively. Objections to the Plan were filed by First Bank of Montgomery County, Trustee, Robert and Mildred Starr and The Federal Land Bank. A confirmation hearing was held on January 21, 1988. The Starrs filed a Memorandum Regarding Section 1225(a)(4) Feasibility Analysis on February 10, 1988. On February 12, 1988, the Trustee filed his objections to the Second Amended Plan. A hearing was held on February 17, 1988.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B) and (L), which the Court may hear and determine.

## DISCUSSION

The Nielsens filed their Chapter 12 case prior to the fall harvest of 1987. However, by the time a confirmation hearing was held, the crops had been harvested and their value was considerably higher than at the inception of this case. These crops were free of any liens. The unsecured creditors objected to the confirmation of the Debtors' plan. They assert that the Debtors failed to meet the requirements of 11 U.S.C. § 1225(a)(4), which provides:

§ 1225. **Confirmation of plan.**

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

By including the value of the unencumbered harvested crops in a liquidation analysis, the creditors argue they would be paid more on their claims if the Debtors were liquidated under Chapter 7. The Debtors, on the other hand, have built their plan on the use of the funds generated from these harvested crops and feel it would be unjust to allow a Chapter 12 plan to rise or fall based on the timing of a harvest.

There has been very little case law developed concerning Section 1225(a)(4) and its interpretation and application. The first reported case concerning Section 1225(a)(4) is the case of *In re Fauth*, 79 B.R. 490 (Bankr.Mont.1987). The *Fauth* court found that the claim by the creditors that they would receive more on liquidation under Chapter 7 than by confirmation of the plan was factually without merit. However, the court then went on to say in dicta that even if the creditor's position on liquidation had been correct, the court could still confirm the plan under the best interest of creditors test. *Fauth* stated that an unsecured creditor must be treated in either one of two ways, either its allowed claim must be paid in full or all of the Debtor's projected disposable income must be committed under the plan to payments of claims. If the Debtor's disposable income is committed to the payment of unsecured claims, liquidation of the farm can be avoided regardless of the amount of that disposable income. The *Fauth* court gave as its reasoning for this determination that liquidation is against the clear intent of Congress to keep the family farmer in operation. It is true Congress has exhibited a desire to keep the family farmer in operation, but *only* if the farmer complied with the standards set forth in Chapter 12 and, in particular, Section 1225. This Court specifically rejects the *Fauth* reasoning. A farmer's plan cannot be confirmed if it fails to comply with 11 U.S.C. § 1225(a)(4). *See, In re Willingham*, 83 B.R. 552 (Bankr.S.D. Ill.1988).

Whether or not the Nielsens' plan meets the requirements of Section 1225(a)(4) depends on the meaning of the phrase "on such date", since that is the date value is to be determined for liquidation analysis. It should be noted that the wording of Section 1225 and Section 1325 is identical. In interpreting the provisions of Chapter 12, courts have often turned to Chapter 13 for guidance because Chapter 12 was closely modeled after the existing Chapter 13 with alterations of provisions that are inappropriate for family farmers. *In re Kjerulf*, 82 B.R. 123 (Bankr.D.Ore.1987).

"Chapter 12 imposes the same requirements as are considered relevant in the Chapter 13 cases: Section 1225(b)(1)(B) provides that the court may not approve a plan over the objection of the trustee or an unsecured creditor unless the plan provides that all the debtor's projected disposable income to be received during the life of the plan will be applied to make payments under the plan, and Section 1225(a)(4) provides that the court shall confirm the plan if the value of the property to be distributed under the plan to unsecured creditors is not less than they would receive under chapter 7 liquidation." *In re Kjerulf*, at 127.

Therefore, this Court looks to the interpretation of Section 1325(a)(4) to give guidance on interpreting Section 1225(a)(4). The Eighth Circuit has held that the language of "on such date" of Section 1325(a)(4) means the date that the petition was filed. *Holytex Carpet Mills v. Tedford*, 691 F.2d 392 (8th Cir.1982). The *Holytex* court cited *In re Statmore*, 22 B.R. 37 (Bankr.Neb. 1982) which held that the statutory language of "on such date" referred to the effective date of the plan but not to the assets in existence on the effective date of the plan. The *Statmore* court read the statutory provision to suggest that if the estate of the debtor were liquidated under chapter 7 on the effective date of the plan, the rights of the creditors would refer back to the petition date. The rights to avoid preferences, fraudulent conveyances, and to pursue the debtor for conversion of estate assets would all be fixed as of the original petition date. Following that line of reasoning, the liquidation value to be used when comparing the amount to be paid to allowed unsecured claims, either

under the proposed plan or Chapter 7 liquidation is to be determined as of the date of the filing of the petition. If the liquidation amount on the date of the filing of the petition was such that the unsecured claimants would receive more or an equal amount under the plan, the plan can be confirmed.

Therefore, a hearing will be set to give the parties the opportunity to present evidence concerning the liquidation value of the assets as of September 1, 1987, the original petition date.