**In re Joseph H. BREMER & Claudette M. Bremer, Debtors.**

**Bankruptcy No. 87–00205–SJ–12–FWK.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Aug. 22, 1989.

---

include distribution to unsecured and undersecured creditors in the amount of $39,482.00, which the Court found to be non-exempt, unsecured assets improperly excluded from the debtors' plan. The Court held that it could not confirm the plan under the "best interest of creditors" test of 11 U.S.C. Section 1225(a)(4) unless the above described amendment was included in the plan. After denial of their Motion For Reconsideration, the debtors appealed the Bankruptcy Court's valuation of assets under the test. The District Court reversed and remanded for reconsideration and recomputation of the "best interest of creditors" test. The matter is now before this Court. Three issues must be resolved: (1) whether the hypothetical Chapter 7 liquidation of Section 1225(a)(4) should be set at the time the debtor filed the petition in bankruptcy, or at the time of the effective date of the plan; (2) whether certain assets of the debtor, namely future federal aid payments (CRP), and crops in existence though not harvested at the effective date, are to be considered property of the estate for purposes of including them in the "best interest of creditors" analysis; and (3) how the assets should be valued.

## STATEMENT OF FACTS

Joseph J. Bremer and Claudette M. Bremer (hereinafter "the debtors") filed a petition for relief under Chapter 12 on January 16, 1987. Their 480 acre farm is located in Gentry County, Missouri. At the time of the filing, the 392 tillable acres of their farm were primarily devoted to growing soybeans.

On February 19, 1987, the Farmers Home Administration (hereinafter FmHA) filed a proof of claim in the amount of $382,344.41. The claim is secured by a security interest in the debtors' real estate and certain farm machinery. At a hearing on confirmation on June 29, 1987, the debtors and FmHA negotiated for a plan treatment because of a dispute over the value of the real estate used as collateral. At the hearing, the parties agreed that the claim would be allowed as secured in the sum of $190,000.00, to be amortized over twenty

Joel Pelofsky, Kansas City, Mo., for debtors.

## MEMORANDUM OPINION

### FRANK W. KOGER, Chief Judge.

Debtors filed for relief under Chapter 12 on January 16, 1987. A confirmation hearing was held June 29, 1987. On September 12, 1987 the Bankruptcy Court, the Honorable Dennis J. Stewart presiding, amended the debtors' proposed Chapter 12 plan to

(20) years, with interest at 7%. It was agreed that the annual payment of $17,-622.00 would be made in December of each year.

Lawson Equipment, Inc. also filed a claim in the amount of $82,365.75. The claim was secured by some of the debtors' farm machinery, trucks and trailers. Debtors valued the collateral at $32,950.00. After negotiation debtors agreed to surrender the farm equipment, and a truck, and to retain other trucks and trailers values at $22,500.00. Under the debtors' reorganization plan, Lawson's secured claim of $22,-500.00 was to be amortized over five (5) years with interest at 10%. The payments were to be made quarterly in the amount of $1,434.00.

At the June 29, 1987 confirmation hearing, Mr. Bremer testified as to his income for 1987. Soybeans, which were not available for harvest until November or December, were planted on fifty-two (52) acres. Three hundred twenty-five (325) acres were placed in the Conservation Reserve Program (CRP), with payment to begin in October or November, 1987.[1] Testimony regarding these assets were projections of income. At the hearing Mr. Bremer testified that he would receive $18,850.00 from CRP payments and a $7,507.50 yield from his crops.

Under the proposed plan, the balance of FmHA's and Lawson's claims were treated as unsecured. Neither creditor objected to the treatment of the unsecured class nor, after the agreement with FmHA, to valuation.

On August 28, 1987, the Court issued an order directing creditors to show cause why the proposed plan, as orally amended at the June 29 hearing, should not be confirmed. In that order the Court noted that the schedules filed by the debtors at the time of filing showed the following non-exempt, unsecured property:[2]

| Description | Value |
|---|---|
| cash and money in the bank | $ 1,850.00 |
| growing crops | $37,632.00 |

The creditors did not respond to the show cause order.

Nevertheless, the Court entered an order on September 23, 1987, amending the debtors' proposed Chapter 12 plan of adjustment to provide for the payment of $39,-482.00 to unsecured and undersecured creditors. The Court based its amendment on the "clear, unequivocal and uncontradicted" statement of the debtors in their statement of operations to the effect that they had $39,482.00 in unsecured property as of the date of the confirmation hearing, June 29, 1987.

In part, the Court based its decision on 11 U.S.C. Section 1225(a)(5):

> In imposing the requirement, however, that a chapter 12 debtor propose to pay unsecured creditors at least as much as they would have received in straight liquidation under chapter 7, section 1225(a)(4) clearly provides that the value of the property which would have been liquidated is to be measured as of the "effective date of the plan" not as of the date of filing of the petition.

Although none of the creditors objected to the plan in this regard, the Court noted that the requirements of Section 1225 do not provide for waiver with respect to the requirement that the creditors receive at least as much as they would receive in straight liquidation. The plan was confirmed as amended.

The debtors subsequently filed a timely Motion To Alter Or Amend The Judgment, alleging that on the date of filing (January 16, 1987) they did not have any crops planted. The only unencumbered assets the debtors claim to have had at this time

---

**1.** Mr. Bremer's mother has a twenty-five percent (25%) interest in each tract of land.

**2.** The Court noted that the total of unsecured and undersecured indebtedness was $292,-975.16, with the value of unsecured property approximately 14% of that total. The Court further observed that the debtors' proposed plan called for unsecured and undersecured creditors to receive 0% of their claims other than debtors' "disposable net income". Actually, the plan called for these creditors to receive $1,000.00 a year for at least three years, in addition to payments from the debtors' net disposable income.

consisted of money in the bank. In an affidavit in support of this Motion, Joseph Bremer declared that on the date of filing, all of the 1986 crop, or the proceeds from that crop, had been sold and disbursed. Mr. Bremer also stated in this affidavit that the 1987 crop had not been planted as of the filing date.

The Bankruptcy Court denied the Motion For Reconsideration by an order signed October 29, 1987. The Court found Mr. Bremer's assertion that the crops were not in existence at the time of filing to be at odds with the earlier assertion made in connection with the filing of the petition that the crops were in existence at that time:

> ... [T]heir current statement, viewed in context of the schedules of their assets filed with the petition is not credible, when those schedules do not reveal the existence of the cash assets which would seemingly have been necessary for crop inputs.

The Court confirmed the amended plan, ordering the debtors to distribute an additional $39,482.00 to the unsecured creditors pro rata over a five (5) year period.

On January 14, 1988, the Bankruptcy Court issued an order directing the interested parties to show cause why a stay should not be granted, pending appeal, which would permit the debtors to perform the plan without the amendment interposed by the Court. Neither debtors nor creditors objected. The stay was granted on February 9, 1988.

Soon thereafter, the debtors appealed from the Order of Confirmation. Debtors argued that the Bankruptcy Court's $39,-482.00 amendment was not supported by the evidence because it was not available on the effective date of the plan. Debtors claimed that their growing crop was unready for harvest and, therefore, had no value on the effective date. Similarly, debtors asserted that the value of the projected CRP payments were nil on the effective date, the alleged application date of the "best interest of creditors" test.

By order dated November 22, 1988, the District Court reversed, holding that the

Bankruptcy Court's appraisal was "at least" $6,000.00 too high. The District Court noted a conflict as to whether the Chapter 7 liquidation test time should be set at the time of filing the petition in bankruptcy, or as of the effective date of the confirmation hearing. *In re Nielson,* 86 B.R. 177 (Bankr.E.D.Mo.1988), relying on *Hollytex Carpet Mills v. Tedford,* 691 F.2d 392 (8th Cir.1982), use of the filing date. *Education Assistance Corp. v. Zellner,* 827 F.2d 1222 (8th Cir.1987) holds that postpetition property acquired after the filing date should be considered. In its order the District Court observed that even though all parties to the present case treat *Zellner* as controlling, that case may not be proper authority in that it relies on a statement from 5 Collier on Bankruptcy, 1325.05(2)[a] that has since been re-edited and fails to consider whether *Hollytex* establishes the law in the Eighth Circuit. In addition, the District Court expressed concern that *Zellner's* explanation of the "best interest of creditors" test may be viewed as dicta in that it did not determine the outcome of the case.

The District Court remanded for reconsideration and recomputation based upon selection of an appropriate date for valuation. Due to the untimely death of the Honorable Judge Stewart, this case is now before this Court.

Debtors requested a hearing on valuation. At that hearing on June 1, 1989, the Court directed the parties to file briefs on the question of the appropriate date for liquidation analysis and such other matters as the parties believe appropriate. Based on the foregoing facts and decisions, this Court now turns to the resolution of the three issues discussed above.

## VALUATION DATE

One of the prerequisites for confirmation of a Chapter 12 plan is that it satisfy the "best interest of creditors test" found at 11 U.S.C. Section 1225(a)(4). This provision states:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> .      .      .      .      .

(4) the value, as of the effective date of the plan, or property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date ...

A systematic resolution of the liquidation date controversy before this Court must begin by deciding whether *Hollytex* establishes the law in the Eighth Circuit regarding whether the hypothetical liquidation should be applied as of the date of the bankruptcy filing or as of the effective date of the plan.

In *In re Nielson*, supra, 86 B.R. 177, the Court found *Hollytex*, supra, 691 F.2d 392, persuasive authority that the hypothetical Chapter 7 liquidation is to be applied as of the date of filing. In *Nielson*, the debtors did not include their unencumbered 1987 crop into their liquidation analysis. Unsecured creditors claimed that the debtors' plan failed to meet the "best interest of creditors" test because the 1987 proceeds would have been paid to them had the estate been liquidated under Chapter 7. The debtors argued that their proposed plan was based on use of the funds from the 1987 harvest and that it would not be fair to base a confirmation determination on the timing of the harvest.

In rejecting the creditor's argument, the Court first noted the appropriateness of looking to cases interpreting 11 U.S.C. Section 1325(a)(4), which is identical to Section 1225(a)(4). The *Nielson* court cited *Hollytex* wherein the Eighth Circuit Court of Appeals held that "on such date" in Section 1325(a)(4) meant the petition date, not the confirmation date. The circuit court in turn cited in its decision *In re Statmore*, 22 B.R. 37 (Bankr.D.Neb.1982) in which a Bankruptcy Court determined that "on such date" referred to the effective date of the plan, but not to the assets in existence as of the effective date.

In the recent case of *In Matter of Bluridg Farms, Inc.*, 93 B.R. 648 (Bankr.S.D. Iowa), the Bankruptcy Court declined to follow *Nielson* and held that the date of confirmation, not the date of filing, controlled the "best interest of creditors" test for purposes of confirming a Chapter 12 plan. The *Bluridg Farms'* court based its decision on the distinguishing fact that both *Hollytex* and *Statmore* focused on post-confirmation modifications of Chapter 13 plans. This Court finds the *Bluridg Farms* analysis persuasive.

In *Bluridg Farms*, the debtors' farm operation generated substantial income after the filing date, but before the confirmation date. The income consisted of government program payments and proceeds from crops planted postpetition and from custom cattle feeding. These unencumbered assets were not reflected in the debtors' liquidation plan. Therefore, a creditor bank argued that the debtors' plan failed to satisfy the "best interest of creditors" test and could not be confirmed. The creditor's argument hinged upon whether the filing date or the effective date was the appropriate time for the liquidation test.

In declining to follow *Nielson*, the *Bluridg Farms'* court carefully scrutinized the appropriateness of *Nielson's* reliance on *Hollytex* and *Statmore*. Based on a similar analysis, this Court also finds *Nielson* and *Hollytex* inapplicable to the case at bar.

*Hollytex*, supra, 691 F.2d 392, focused on the effect a Chapter 13 post-confirmation modification of a plan had on the effective date of a reorganization plan, and therefore on the debtors' time frame for electing exemptions. In *Hollytex*, the debtors elected certain exemptions at the time their original plan was confirmed pursuant to 11 U.S.C. Section 522(d). On the date a third modification was filed, an Arkansas statute went into effect which prohibited Arkansas residents from using the federal exemptions.[3] Subsequently, the creditors objected to the third modified plan because they

---

3. This authority to prohibit certain exemptions is specifically reserved for the states in some situations in 11 U.S.C. Section 522(b)(1).

continued to rely on the federal exemptions. On appeal from the District Court which overruled the creditors' objection, the Eighth Circuit specifically addressed only two issues:

1. Whether the date of the third modification of the plan ... is the "effective date of the plan" under 11 U.S.C. Section 1325(a)(4);

2. Whether [debtor] would receive a greater payment on its claim if the debtor were to file a proceeding under Chapter 7 of the Bankruptcy Code.

*Id.* at 393. In a per curiam decision affirming the District Court, the Circuit Court held a debtor may exempt any property that is exempt under federal, state or local law on the date of filing the petition. The court explained that the fact that a modification was filed at a later date does not change the effective date of the plan for the purpose of electing exemptions. The view that the creditor bank would receive a greater payment under Chapter 7, the court added, was based on the erroneous assumption that the effective date of the plan is the date of the last modification.

Also see *In re Statmore,* supra, 22 B.R. 37. In *Statmore,* debtors filed a proposed modification of their confirmed Chapter 13 plan which sought to reduce the amount payable to unsecured creditors from $6,000.00 to zero. The debtors claimed that the assets which creditors could look to had changed since their Chapter 13 petition was filed, and because of that change, the debtors' assets at the time of the confirmation were totally exempt under applicable law. The debtors contended that the "on such date" in Section 1325(a)(4) controlled and referred to the effective date of the plan. Therefore, the debtors asserted that unsecured creditors would receive nothing if, as of the modification, the estate were liquidated under Chapter 7.

In deciding whether the filing date or the effective date controlled when assets were considered exempt from being included as property of the estate, the Court looked at the language of Section 1325(a)(4). The *Statmore* court noted that it is difficult to read the statutory language as referring to other than the effective date. In language upon which the *Hollytex* court based its decision, the *Statmore* court explained its interpretation of Section 1325(a)(4):

Historically, the date of the filing of the petition in bankruptcy has been the cleavage date in defining the rights of the debtor and his creditors. Trustee's avoiding powers generally arise on that date and the debtor's rights in exempt property also are defined on that date * * * Nothing in the legislative history suggests that the historical concept is expressly modified by use of the statutory language now under consideration.

*Statmore,* supra, 22 B.R. at 39. Thus, the *Statmore* court did not decide whether the liquidation test mandated by Section 1325(a)(4), and therefore, the liquidation test of Section 1225(a)(4), should be applied on the effective date. Rather, in resolving the question of when debtors' and creditors' rights in exempt and nonexempt property are established, the court held that the rights of creditors refer back to the petition date.[4]

*Statmore* focuses on when creditors' rights to nonexempt assets vest, not with when the valuation of the nonexempt assets should occur for purposes of Section 1325(a)(4). In deciding whether to allow the debtors to modify their confirmed plan and exempt property that had changed value since the filing of their petition, *Statmore* can be narrowly read to state that debtors' and creditors' rights in exempted property are defined on the date the petition in bankruptcy is filed.

---

**4.** The court explained its reasoning behind this holding in some detail:

I read the statutory language "on such date" to refer to the effective date of the plan but not to the assets in existence on the effective date of the plan. I read the statutory provision to suggest that if the estate of the debtor were liqui- dated under Chapter 7 on the effective date of the plan, the rights of creditors would refer back to the petition date. Their rights to avoid preferences and fraudulent conveyances and to pursue the debtor for conversions of estate assets would all be fixed as of the original petition date. *Statmore,* supra, at 38.

In the present case, there is no controversy regarding whether the liquidation test should be applied on the first effective date or on a modified effective date, as in *Hollytex*. Similarly, the controversy here at issue is not whether the creditor's rights in exempt property are defined at the date of filing or on a modified effective date, as was the case in *Statmore*. The issues of fact and law in controversy in the present case are significantly and sufficiently distinct from *Hollytex* and *Statmore* that this Court, like the *Bluridg* court, does not find them, or *Nielson*, to be controlling precedent in resolving the Section 1225(a)(4) problem.

■ Having decided that *Hollytex* is not precedent for resolving the Section 1225(a)(4) controversy in the Eighth Circuit, this Court now turns to whether language in *Education Assistance Corp. v. Zellner*, supra, 827 F.2d 1222 is valid and helpful authority or should be dismissed as dicta. Generally, a Bankruptcy Court is not bound by dicta, *In re Crook*, 62 B.R. 937 (Bankr.D.Ore.1986), rev'd on other grounds, 79 B.R. 475. Several factors may weigh against a court's giving deference to a passage found in a prior opinion as dictum: (1) the passage may be unnecessary to the outcome of the earlier case and, therefore, perhaps not fully considered as it would have been if it were essential; (2) the passage was not an integral part of the earlier opinion; (3) the passage was not grounded in the facts of the case and judges may, therefore, have lacked adequate expediential basis for it; and (4) the issue addressed in the passage was not presented as an issue and, therefore, was not refined by the fires of the adversary presentation. *U.S. v. Crawley*, 837 F.2d 291 (7th Cir.1988). However, lower courts should give great weight to statements made by the Court of Appeals in their circuit, even though the statements were dicta, *In re Churchfield*, 66 B.R. 30 (Bankr.E.D.Mich.1986). Based on analysis of the case, this Court concludes that *Zellner* is proper authority on the issue of when valuation of the plan and the hypothetical liquidation, according to the "best interest of creditors" test of Section 1225(a)(4) and Section 1325(a)(4), should occur.

In *Zellner*, the Circuit Court held it a harmless error for the Bankruptcy Court to fail to include as assets of the estate a $6,000.00 lump sum postpetition payment from a retirement fund and a subsequent transfer to an IRA account. The Court's analysis focused on whether inclusion of the property in the estate valuation would enable the creditor to receive more money in the hypothetical Chapter 7 liquidation of Section 1325(a)(4) than it would receive from payments under the debtor's Chapter 13 plan.

In attempting to resolve this issue, the *Zellner* court pointed out that the Chapter 13 estate includes property acquired during pendency of the case pursuant to 11 U.S.C. Section 541, but also includes postpetition property acquired by the debtor under 11 U.S.C. Section 1306(a)(1).[5] The Court then set out the following quote from 5 Collier on Bankruptcy, 1325.05[2][a] (footnotes omitted):

> The date of the valuation of the property to be distributed under the plan, as well as the date as of which the conceptualized chapter 7 liquidation is to have taken place, are one and the same; both relate to the effective date of the plan ... Of course, the effective date of the plan cannot be antecedent to the confirmation hearing at which the issues raised by section 1325(a)(4) are to be heard by the court.

**5.** 11 U.S.C. section 1207(a) is nearly identical to text of section 1306(a). Both define property of the estate in regard to the purposes of their respective chapters:

(a) Property of the estate includes, in addition to the property specified in Section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first.

*Zellner* at 1225. The Court held that the evidence in record did not show that the plan distribution to unsecured creditors was less than what they would receive if the $6,000.00 had been taken into account in the best interest of creditors test. *Id.* at 1225.

In order to determine whether or not debtors' failure to include the $6,000.00 into their plan was harmless error or not, the *Zellner* court first had to establish the dates to utilize when valuing the plan and hypothetical liquidation value of the estate. Determination of the issue was not dicta, but was based on facts in the record and was integral and necessary to determine the outcome of the case.

The District Court in the case at bar was troubled by the fact that the *Zellner* court's determination of the liquidation date was based on a section of Collier that has since been re-edited. See, supra. Notwithstanding the omission of this language from Collier, there is sufficient legal authority to support applying the liquidation test on the effective date as suggested by the language in *Zellner*.

A logical starting point for interpreting Section 1225(a)(4) is an approach similar to that followed by the court in *In re Perdue,* 95 B.R. 475, namely examining the specific language of the statute itself. Absent an ambiguity or clearly expressed legislative intent to the contrary, the language of the statute is conclusive. *In re Perdue,* supra, 95 B.R. at 476, citing *In re Helm,* 48 B.R. 227 (Bankr.W.D.Ky.1985); *In re Perry,* 48 B.R. 591 (Bankr.Tenn.1985). See also, *U.S. v. Jones,* 811 F.2d 444 (8th Cir.1987) (if wording of statute is plain, simple, and straight forward, words must be accorded their normal meanings), and *Community Blood Bank of Kansas City Area, Inc. v. F.T.C.,* 405 F.2d 1011 (8th Cir.1969) (plain, obvious and rational meaning of statute is preferred to any curious, narrow, hidden

sense that nothing but exigency of hard case and ingenuity and study of acute and powerful intellect would discover).

■ In *Perdue,* the Court addressed whether the liquidation test used when determining the confirmability of a Chapter 12 plan had to be applied as of the date of confirmation of the plan, or the date of the bankruptcy filing. After reviewing the statutory language, the Court noted that—

> [W]hile the Code fails to define the words "effective date of the plan", this Court is confident from the plan language of the Code that such words can logically refer only to the date of confirmation and not the date of the filing of the bankruptcy petition. It is also clear in the Court's view that the words "on such date" ... relate back to the "effective date of the plan".

Based upon the plain meaning of the statute, the *Perdue* court concluded that Section 1225(a)(4) means that unsecured creditors shall not receive less under a Chapter 12 plan than they would receive if the debtor's estate were liquidated on the effective date of the plan. We interpret Section 1225(a)(4) consistent with this analysis.[6]

In addition to being consistent with statutory construction, this interpretation is also consistent with the policy considerations behind the "best interest of creditors" and Chapter 12 in general. In interpreting Section 1225(a)(4), it is important to remember that the purpose behind this hypothetical liquidation is to ensure that creditors are receiving a "fair deal" under the plan. Section 1225(a)(4) calls for a comparison between "property to be distributed under the plan" to unsecured creditors and the amount which would be paid to each such creditor in a hypothetical Chapter 7 liquidation. It is impossible to compare the difference in distribution to unsecured creditors under the plan with the distribu-

---

**6.** Further, the *Perdue* court's interpretation is consistent with the well-settled principal of statutory construction known as "the doctrine of the last antecedent", which was clearly set forth in *Mandina v. U.S.,* 472 F.2d 1110, 1112 (8th Cir.1973) (interpreting federal gun control statute):

qualifying words or clauses refer to the next preceding antecedent except when sense and meaning require a different construction.

Applying that rule here, it seems "on such date" can logically only refer to the clause directly preceding it, "the effective date of the plan" language of the statute.

tion unsecured creditors would receive in a hypothetical liquidation by reading Section 1225(a)(4) in isolation from the rest of the Code. Prior to engaging in the "best interest of creditors" controversy here at issue, the Court must first determine what assets are to be considered property of the estate under Section 1207 and thus part of the liquidation analysis.

## PROPERTY OF THE ESTATE

■ Because Chapter 12 does not normally contemplate liquidation of the debtor's property, the concept of "property of the estate" is generally less important in a Chapter 12 proceeding than it is in a Chapter 7 liquidation. The nature of a Chapter 12 reorganization is a debt extension proceeding, not debt extinction. This debt extension process requires a departure from the approach generally applicable in Chapter 7 proceedings that property of the estate be determined as of commencement of the case. Instead, property of the estate for Chapter 12 purposes includes property interests of the debtor during the pendency of the entire case, as well as property rights acquired by the Chapter 12 estate after the commencement of the case. Accordingly, the Section 1207 definition of property of the estate incorporates and expands upon the definition of property of the estate found in Section 541. Cf. 5 Collier on Bankruptcy, 1306.01 at 1306—1.

To accept the argument that the liquidation test should be applied to property of the estate on the filing date would run contrary to Section 1207. As the *Bluridg Farm* court noted in rejecting the filing date argument:

> To allow the debtor to retain the property generated while the automatic stay was in effect and before the confirmation hearing was completed violates concepts of fairness and equity which pervade the Code.

*Bluridg Farm*, supra, 93 B.R. at 653. Parenthetically, the *Bluridg* court explained the inequity of adopting the petition date approach, Id. at 654:

> ... [U]nencumbered nonexempt assets in existence at the time a petition is filed

typically are utilized in the day to day operations of the business or are encumbered pursuant to 11 U.S.C. Section 364 and presumably for reorganization purposes. To require the debtors to pay unsecured creditors an amount based on what was in existence at the time the petition was filed rather than on what is in existence at the time of confirmation seemingly ignores the reorganization process and the delicate balance of rights and interests among the various parties. For example, to the extent the unsecured creditors are unable to prove that reorganization is unlikely and the case should be dismissed or that a motion to incur secured debt should be denied, they usually witness some erosion of any equity cushion prior to the confirmation. Accordingly, it is not unreasonable for the unsecured creditors to expect to receive under a confirmed plan what would be available to them if the estate were liquidated as of the effective date of confirmation.

If the liquidation test were set on the date of filing, a sophisticated debtor could theoretically manipulate the bankruptcy process in a manner which would minimize the value of assets available to creditors under the reorganization plan and maximize the assets the debtor would be able to retain. By carefully analyzing the ebb and flow of the income stream, the debtor could attempt to avoid filing until the market value of the assets dropped extremely low. By waiting until such time to file, the debtor could practically guarantee that any proposed plan would be higher than the liquidation value of the debtor's assets. This "debtor arbitrage" would subvert Chapter 12's goals of offering family farmers the important protection from creditors that bankruptcy provides while also ensuring that farm lenders receive a fair payment. Setting the liquidation test to include property of the estate at the time of the effective date is consistent with this goal and avoids the above mentioned inequities. Section 1225(a)(4), in conjunction with Section 1207 mandates that the distribution of property of the estate under the plan must include any property that the estate ac-

quires after commencement but before confirmation.

## VALUATION

Debtors argue that even if the property of the estate were valued on the effective date, the CRP payments and crops had no value at that time. The CRP payment was not due and the crops were similarly not ready for harvest. While Section 1225(a)(5) does not specifically address how claims should be valued, the Code is not silent on the subject. A review of other Code sections which call for valuation of assets clarifies the method to be used to make codal valuations.

Section 506(a) sets forth the criteria for determination of secured status under the Code. In establishing how to value a creditor's lien on property of the estate or right to setoff, the Code notes that value shall be determined in light of the purpose of the valuation and of the proposed disposition of said property, and in conjunction with any hearing on the disposition or use or on a plan affecting such creditor's interest. The legislative history of Section 506 further explains the valuation process:

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property. This determination shall be made in conjunction with any hearing on such disposition or use of property or on a plan affecting the creditor's interest. To illustrate, a valuation early in the case in a proceeding under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of the plan.

Senate Report No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5854.

The legislative history of Section 361 which deals with the Court's determination as to whether the interest of a secured creditor or co-owner of property with the debtor is adequately protected, also serves to illustrate the principles underlying the codal method of valuing property and assets. The legislative history of Section 361 explains that while the section specifies a nonexclusive and nonexhaustive list of ways to providing adequate protection, all rely on the value of the protected entity's interest in the property involved:

> The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case ... The flexibility is important to permit the court to adapt to varying circumstances ...

H.R. No. 95–595, 95th Cong., 1st Sess. 339 (1977).

■ Review of these sections and their legislative histories provide a clear overview of the flexible procedure the drafters intended the court to utilize in making Code mandated valuations. The procedure for codal valuations should be formulated on a case-by-case basis, based on the facts of the case, and should be made in light of general equitable principles.

■ Applying these principles to Section 1225(a)(4), the Court finds that since the CRP payments and crops were property of the estate on the effective date of the plan, they should be included in the valuation process. In fact, any and all unsecured and unencumbered assets which are property of the estate should be included in the valuation as of the effective date. Both the CRP payment and the crops had values as of the effective date of the plan which were capable of estimation. Had the debtors included the CRP payments and crops in the valuation on the effective date, the valuation could have been estimated by the debtors themselves or based on expert testimony. Therefore, the "best interest of creditors" analysis of Section 1225(a)(4) should include the liquidation value on the effective date of all unencumbered non-exempt property of the estate, including the estimated value of the crops and CRP payments.

## CONCLUSION

For the reasons stated, this Court finds that it cannot confirm debtors' Chapter 12 Plan until such time as the debtors' Plan meets the "best interest of creditors" test of Section 1225(a)(4). Debtors may file an Amended Plan within twenty (20) days if they so desire. Otherwise, the Court will dismiss the proceeding.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.