**In re Melvin D. FOOS, Debtor.**

**Bankruptcy Nos. 2–90–01790, 277–32–3997.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Nov. 19, 1990.

Steven R. Fansler, West Liberty, Ohio, for debtor.

David F. Allen, Allen, Howard, Yurasek & Merkin, Marysville, Ohio, for Merchants & Mechanics Federal Sav. & Loan.

Steven L. Diller, Hatcher, Diller, Rice & Beebe, Van Wert, Ohio, for Bank One of Marion.

Frank Pees, Worthington, Ohio, Chapter 13 Trustee.

Charles M. Caldwell, Columbus, Ohio, U.S. Trustee.

## OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 12 PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

## I. PRELIMINARY CONSIDERATIONS AND JURISDICTIONAL STATEMENT

This matter is before the Court upon the requested confirmation of a First Amended Plan of Reorganization (the "Amended Plan") proposed by the debtor under Chapter 12 of the Bankruptcy Code. Bank One of Marion, N.A. ("Bank One") objected to confirmation. The matter was heard by the Court on August 27, 1990 at which time the Chapter 12 Trustee also appeared.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334 and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) which this Court may hear and determine. For the reasons stated herein, the Court denies confirmation of the Amended Plan.

## II. FACTS

The debtor, Melvin D. Foos, filed his petition for relief on March 16, 1990. Of the 890 acres of farmland owned or leased by the debtor, 753 acres are tillable.

At the date of petition, the debtor had approximately 154 acres of wheat and canola in the ground. The wheat and canola have been harvested and sold. The debtor possesses about $500 of the approximate $30,000 proceeds realized from the sale of such crops.

After the petition date, the debtor planted approximately 560 acres of corn and soybeans. The corn and soybeans were unharvested at the time of the August 27, 1990 confirmation hearing and will be un-

available for harvest until late in the year 1990. In the debtor's summary of operations filed with this Court, the debtor projects gross proceeds from the sale of such corn and soybeans in the amount of $145,377.50.

The debtor also testified at the confirmation hearing that he is entitled to receive later in the year 1990 approximately $10,000.00 in government payments for his set aside acreage. The debtor's unharvested crops, the proceeds from the sale of the wheat and canola, and the projected government payments are all unencumbered.

Bank One has filed an amended proof of claim in the amount of $255,272.09. The debtor's indebtedness to Bank One is evidenced by a promissory note and secured by a first real estate mortgage on approximately 158 acres of the debtor's land. While the debtor's spouse is not a signatory to the promissory note to Bank One, she is a signatory to the mortgage securing Bank One's claim. The uncontested value of the debtor's land mortgaged to Bank One is $146,300.00. Accordingly, Bank One is an undersecured creditor holding both a secured claim and an unsecured claim. 11 U.S.C. § 506(a).

Under the Amended Plan, the debtor proposes to satisfy Bank One's $146,300.00 secured claim by making annual payments on such amount (the payments being amortized over a period of 20 years), with a balloon payment of all unpaid principal and accumulated interest at the end of 10 years. The Amended Plan provides for a fixed interest rate of 10% per annum, the present rate of interest under the debtor's existing promissory note to Bank One.

The Amended Plan proposes to satisfy all unsecured claims, including the unsecured claim of Bank One, by paying each holder of an unsecured claim such claimant's pro rata share of the disposable income payment which the debtor is obligated under the Amended Plan to make to the Chapter 12 Trustee on an annual basis for three years. The Amended Plan provides that

each such annual disposable income payment shall be not less than $12,500.00.

In the Objection and at the confirmation hearing, Bank One raised a number of concerns as to the confirmability of the Amended Plan. As summarized below, all but one of Bank One's objections were ruled upon or otherwise resolved at the confirmation hearing. However, Bank One's objection that the Amended Plan fails to satisfy the hypothetical liquidation or "best interest of creditors" test of § 1225(a)(4) was taken under advisement and is now considered by the Court.

### III. ISSUES

The issues before the Court are:

1. Whether the Amended Plan should be confirmed; and
2. Whether the debtor has satisfied the liquidation test of § 1225(a)(4).

### IV. DISCUSSION

A. *The Resolved Objections.*

With the exception of Bank One's objection that the Amended Plan fails to satisfy the requirements of § 1225(a)(4), those objections raised by Bank One concerning the Amended Plan were, in various fashions, decided or resolved at the confirmation hearing. Briefly, those objections and their resolutions are as follows.

■ Two of Bank One's objections focus on the debtor's failure to include his spouse as a co-debtor under the Amended Plan. As to Bank One's first objection concerning the effect of confirmation upon Bank One's mortgage interest in the dower interest of the debtor's spouse, the parties agreed at the confirmation hearing that Bank One's mortgage interest would be unaffected by confirmation of the Amended Plan. Bank One's second objection concerning the debtor's failure to include his spouse's income within the Amended Plan's definition of disposable income was ruled upon and resolved at the confirmation hearing by the requirement that the debtor's wife would either contribute her income to the family's expenses or would not have her share of the family's expenses paid by the debtor.

■ Concerning the treatment of Bank One's secured claim, Bank One objected to the Amended Plan's provision for a fixed interest rate of 10% per annum. Based upon the testimony proffered at the confirmation hearing, the Court finds that the applicable rate for a similar loan made today would be a fixed rate of 12% per annum. Accordingly, such a fixed 12% rate would be the appropriate rate for any plan of reorganization proposed by the debtor. *United States v. Arnold,* 878 F.2d 925 (6th Cir.1989).

Bank One also raised the objection that the Amended Plan fails to meet the feasibility requirements of § 1225(a)(6). However, based upon the debtor's testimony at the confirmation hearing, Bank One now concedes that the feasibility test has been met. Accordingly, the Court finds on that basis that the Amended Plan, as proposed, is feasible.

B. *The Liquidation Test.*

The Court now turns its attention to Bank One's objection that the Amended Plan does not satisfy the liquidation test found in § 1225(a)(4). That section provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

 \* \* \* \* \* \*

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.] on such date;

Before the Court can determine if the Amended Plan satisfies § 1225(a)(4), however, the Court must first decide two sub-issues.

1. *Property of the Estate for Purposes of Valuation.*

In beginning its analysis, the Court must determine what assets comprise "the estate of the debtor" for purposes of the

§ 1225(a)(4) liquidation test. In particular, the Court must decide whether property acquired by the debtor postpetition must be included in the test.

■ In a Chapter 7 proceeding, the estate is created at the commencement of the case and includes all of the property described in 11 U.S.C. § 541. In a Chapter 12 case, however, 11 U.S.C. § 1207 operates to define property of the estate as follows:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title [11 U.S.C.S. § 541]—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.], whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.], whichever occurs first.

(b) Except as provided in section 1204 [11 U.S.C.S. § 1204], a confirmed plan, or an order confirming a plan, the debtor shall remain in possession of all property of the estate.

In general, § 1207 incorporates by reference and expands upon the § 541 definition of property of the estate so as to include property of the debtor acquired after commencement of the Chapter 12 case.

■ In determining what assets comprise the estate for purposes of the § 1225(a)(4) hypothetical liquidation, at least three courts have applied the more expansive definition of property of the estate found in § 1207. *In re Bremer*, 104 B.R. 999 (Bankr.W.D.Mo.1989); *In re Perdue*, 95 B.R. 475 (Bankr.W.D.Ky.1988); *Matter of Bluridg Farms, Inc.*, 93 B.R. 648 (Bankr.S.D.Iowa 1988). Each of these courts seems to have chosen use of the § 1207 definition of property of the estate to avoid perceived inequities which might

otherwise result from the exclusion of postpetition property from the liquidation test.

This Court believes that while the equitable considerations raised particularly by the *Bremer* court are not wholly without merit, there are counterveiling considerations that require the use of the more limited definition of property of the estate found in § 541 in the context of the liquidation test of § 1225(a)(4). Initially, this Court observes that the plain language of § 1225(a)(4) requires use of the § 541 definition of property of the estate. As explained below, the words "on such date" in § 1225(a)(4) logically must be construed to refer to the preceding clause "effective date of the plan," thereby determining the date on which the hypothetical liquidation must be applied. If Congress intended for the words "on such date" to modify for purposes of the liquidation test the normal rule that § 541 alone defines property of the estate in a liquidation under Chapter 7, the words "on such date" would have more appropriately appeared in the statute as follows:

... the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor *on such date* were liquidated under Chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.] (emphasis added).

Given the plain language of the statute, the hypothetical liquidation in § 1225(a)(4) must be of the estate created under § 541. That represents the full extent of any estate available to creditors if the case had been filed under the provisions of Chapter 7. The inclusion of property available to the estate only in a Chapter 12 case (the § 1207 property) in a Chapter 7 hypothetical would be inconsistent and inappropriate.

In addition to the plain language of the statute, policy considerations militate in favor of using § 541's definition of property of the estate in the liquidation test. While the *Bremer* court is correct in stating that "the purpose behind this hypothetical liqui-

dation is to ensure that creditors are receiving a 'fair deal' under the plan (*Bremer* at 1006)," this Court is not persuaded that an unsecured creditor's receipt under the terms of the plan of as much as it would have otherwise received under a liquidation of the debtor's § 541 estate is not a "fair deal." Additionally, including the debtor's postpetition property in the liquidation test is inconsistent with the Bankruptcy Code's policy of encouraging the use of debt repayment plans rather than liquidation. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, p. 5904. Under the holdings of the above-cited cases, the debtor is in effect penalized for initially choosing reorganization over liquidation, since the debtor's plan must meet a liquidation test that includes property acquired by the debtor postpetition, property that would not have been included had the case originally been filed under Chapter 7.

The *Bremer* court also expressed concern that unless a debtor's postpetition property is included in the liquidation test, sophisticated debtors might manipulate the bankruptcy process by carefully timing the date of filing so as to minimize the value of assets comprising the § 541 estate. *Bremer* at 1007. This sort of "debtor arbitrage," reasoned the *Bremer* court, would subvert the liquidation test's purpose of ensuring that farm lenders receive a fair payment. *Id.*

The Court finds this concern to be unfounded. First, it is not at all uncommon for debtors to time the filing of their petitions so as to gain protections or enhance their rights under the Bankruptcy Code. It is surely not a manipulation of the bankruptcy process for a debtor to file its petition within the applicable preference period such that avoidance powers under 11 U.S.C. § 547 are preserved. Nor is it manipulation for a debtor to take advantage of the stay provisions of 11 U.S.C. § 362 by filing its bankruptcy petition at the last minute before a state law foreclosure. The

point is, sophisticated debtors (or debtors with competent legal counsel) have and probably always will analyze the various timing considerations that are part and parcel of the initiation of a bankruptcy case. This is not a concern that justifies construing the Bankruptcy Code unfavorably to debtors or straining the construction of the statute.

Moreover, this Court's exclusion of § 1207 postpetition property from the liquidation test does less to deprive creditors of their "fair deal" than at first blush might appear. Clearly, in this case and in many cases, the postpetition assets realized by the debtor will be crop payments and/or government set aside payments that will have to be applied to the debtor's disposable income payment obligations after reduction for allowable expenses. *See* 11 U.S.C. § 1225(b)(1) and (2). Thus, the debtor may not simply retain all of its assets acquired postpetition free from any claims of creditors.

### 2. Date of Hypothetical Liquidation.

 Having decided that the § 1225(a)(4) liquidation analysis includes only property of the estate as defined by § 541, the Court must next determine whether to apply the hypothetical liquidation as of the date of the filing of the debtor's petition or as of the date of confirmation. At the confirmation hearing, neither counsel for the debtor nor counsel for Bank One directed the Court to any authority on this issue.

As noted above, this Court concludes that the words "on such date" in § 1225(a)(4) can only refer to the preceding clause "effective date of the plan." Despite the Bankruptcy Code's failure to define "effective date of the plan," the Court believes that, unless the plan provides a different meaning,[1] such words can only mean the date of confirmation. The Court's holding in this regard is in accord with the clear majority of case law. *See,*

---

**1.** Although a debtor's plan of reorganization may define the effective date to be a date other than the date of confirmation, the Court notes that "a debtor may not define the effective date

as the date of the filing of the petition, and that the effective date can be no earlier than the date the first confirmable plan is heard." *In re Musil,* 99 B.R. 448, 451 (Bankr.D.Kan.1988).

*Gribbons v. Federal Land Bank of Louisville,* 106 B.R. 113 (W.D.Ky.1989); *In re Luchenbill,* 112 B.R. 204 (Bankr.E.D.Mich. 1990); *In re Bremer; In re Perdue; Matter of Bluridg Farms, Inc.; Cf., In re Nielsen,* 86 B.R. 177 (Bankr.E.D.Mo.1988).

## V. APPLICATION OF THE LEGAL PRINCIPLES TO THE FACTS

■ When the Court applies the previously discussed legal principles to the facts of this case, the Court finds that the debtor's exclusion of any value for the unharvested corn and soybeans from the liquidation test is proper. These crops, and the proceeds to be received for them, are clearly postpetition assets that do not fall within the § 541 definition of property of the estate.

■ As to the proceeds received by the debtor from the sale of the wheat and canola, such proceeds would be a part of the debtor's § 541 estate and, accordingly, must be included in the liquidation test. 11 U.S.C. § 541(a)(6). Since the Court finds that the liquidation test must be applied as of the effective date, the amount of such proceeds to be included in the liquidation analysis is the approximate $500 remaining as of that date, absent any evidence that the other $29,500 was used or disposed of in an inappropriate manner or in bad faith. The use of unliened cash to properly fund the business between the date of filing and confirmation is a necessary incident of a reorganization. Congressional preference for reorganization, rather than liquidation, means this usage is recognized and sanctioned so long as such usage is prudent and designed to maintain or enhance the business.

■ Finally, as to the projected government set aside payments, no evidence was presented at the confirmation hearing to enable the Court to determine if the debtor's right to receive such future payments is a part of the debtor's § 541 estate. If it appears that such right to receive the payments is a part of the debtor's § 541 estate, the value of such payments, as of the effective date, must be included in the liquidation test. Because the Court cannot determine whether that value is proposed to be paid to unsecured creditors, it cannot find that the "best interest of creditors" test of § 1225(a)(4) has been met.

## VI. CONCLUSION

Based upon the foregoing, the Court sustains Bank One's objections that: (1) the Amended Plan fails to provide, on account of Bank One's secured claim, for a market rate of interest; and (2) the Amended Plan fails to satisfy the liquidation test of 11 U.S.C. § 1225(a)(4). Accordingly, confirmation of the Amended Plan shall be, and is hereby denied. The debtor shall have twenty (20) days from the entry of this order to file an amended plan or take whatever action is appropriate to address the concerns of the Court expressed herein. The debtor shall, within such twenty-day period, also amend his budget in light of the Court's ruling regarding his wife's income and expenses and the ruling requiring the use of a 12% per annum fixed interest rate in connection with the treatment of Bank One's secured claim. If no action is taken within that time, this case will be dismissed.

IT IS SO ORDERED.