UNITED STATES of America, Appellee,

v.

John J. RUISI and Dorothy C. Korn, Appellants.

No. 713, Docket 72–1223.

United States Court of Appeals, Second Circuit.

Argued April 21, 1972.

Decided May 22, 1972.

Herbert Kassner, New York City, for appellant Ruisi.

Irving Anolik, New York City, for appellant Korn.

George H. Weller, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E D. New York, David G. Trager, Asst. U. S. Atty., on the brief), for appellee.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Appellants were convicted in the United States District Court for the Eastern District of New York, after a non-jury trial, for "engag[ing] in the business of . . . dealing in firearms" without a license, in violation of the Gun Control Act of 1968, 18 U.S.C. § 922(a) (1) (1970). The district court dismissed a count charging conspiracy to violate that section. The district judge suspended the imposition of sentence as to both defendants and placed each on probation for a period of one day. Appellants have appealed the judgment of conviction entered on the substantive count.

I.

Appellant Korn is the president and sole stockholder of Kaufman Surplus and Arms, Inc., a corporation which operates two stores in Manhattan specializing in the sale of war surplus matériel, including firearms. Appellant Ruisi is an employee at one of the stores. The corporation is not primarily engaged in the business of dealing in firearms, but it had federal licenses to deal in firearms at both of its stores.

Under the federal statute, an enterprise dealing in firearms must obtain a license for each location at which it sells guns. It cannot obtain a temporary license to sell firearms at a location other than at its *bona fide* business location. For example, a licensed dealer cannot obtain a license to deal in firearms at a trade show or gun show if that show is held at a location other than the site of the dealer's licensed business.

During the weekend of October 18–19, 1969, appellants Korn and Ruisi attended a gun show held at a union hall in Melville, Long Island. Appellant Korn selected approximately 20 guns from one of the Kaufman stores to take to the show. The guns were "long," as opposed to "hand," guns, and, while they were not all manufactured before 1898 so as to be antiques within the meaning of the Act, the firearms were not new, and some would have needed repairs to make them operable. At the show, appellants set up a display table on which the firearms were placed. About 30 to 40 firearms dealers as well as a number of others attended the gun show and firearms were bought and sold. Appellants Korn and Ruisi sold a total of eleven guns. Appellant Korn had initially

set the sales price for each item, and Ruisi conducted the actual sales from the display table, although on occasion he did confer with appellant Korn, who was standing nearby, before making a particular sale. Appellant Ruisi required each purchaser to fill out Form 4473, as required by regulations promulgated pursuant to the Gun Control Act. This form requires detailed information about the purchaser and seller of the firearm, as well as the transaction itself. After the gun show was over, the appellants returned the unsold firearms to one of the Kaufman stores, and appellant Korn deposited the money received from the sales in an account in the name of Kaufman. Neither Korn, Ruisi, nor Kaufman Surplus and Arms, Inc. had a license to deal in firearms at the union hall in Melville where the show was held, nor, as we have indicated above, would it have been possible for them to obtain such a license.

Appellant Korn contended at the trial that she had taken the firearms on consignment from Kaufman Supply and Arms, Inc. and sold them as an individual owner, so that she was not a dealer in firearms within the meaning of the Act. The district court ruled that the appellants "on behalf of the corporation were engaged in the sale of firearms at that [gun] show," and thus violated the statute by engaging in the business of dealing in firearms without a license. The record contains overwhelming evidence to support this finding, and appellants do not challenge it on appeal. The district court found that appellant Korn knew that the unlicensed sales violated federal law but that appellant Ruisi did not. It held, however, that § 922(a) (1) does not require that the government establish that the defendant know that the unlicensed dealing in firearms violates federal law.

## II.

Appellants' first ground for challenging their conviction is that the statute applies only to *interstate* dealing in firearms. They urge that, since the proof at trial established that the transactions in which they engaged were entirely intrastate, the conviction should be reversed and the indictment dismissed.

The relevant section of the Act, 18 U.S.C. § 922(a) (1) (1970), provides:

"§ 922. UNLAWFUL ACTS

"(a) It shall be unlawful—

"(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce;

. . . . "

Appellants cite United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L. Ed.2d 488 (1971) for the proposition that the statute proscribes only interstate dealing in firearms and does not apply to intrastate dealing. They argue that the clause "in interstate or foreign commerce" modifies both the phrase "to ship, transport, or receive" and the phrase "importing, manufacturing, or dealing." In view of the language of the statute itself and the legislative history of the Gun Control Act we must reject appellants' contention.

In United States v. Bass, *supra*, the Supreme Court interpreted the phrase "in commerce or affecting commerce" which appears in 18 U.S.C. § 1202(a) (1) (1970), as applying to all three antecedents—"receives, possesses, or transports"—and not solely to the last antecedent, "transports." The Court emphasized the ambiguity of the statute and the meagerness of the legislative history, 404 U.S. at 343–45, 347, 92 S.Ct. 515. It relied on the principle that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant," id. at 348, 92 S.Ct. at 523, and the principle of federalism that "unless Congress conveys its purpose [to reach intrastate activities] clearly, it will not be deemed to have significantly changed

the Federal-State balance," id. at 349, 92 S.Ct. at 523 (footnote omitted).

Unlike the statute involved in *Bass*, § 922(a) (1) is not ambiguous. From the wording and punctuation of the section it is entirely clear that the "in interstate or foreign commerce" requirement does not modify the proscription against unlicensed "dealing in firearms." It is impossible to read the statute except as demonstrating that Congress intended to make unlawful unlicensed dealing in firearms whether interstate or intrastate. See *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971).

The legislative history of the statute unequivocally supports the conclusion that Congress intended to proscribe unlicensed intrastate dealing in firearms. See S.Rep. No. 1097, 90th Cong., 2d Sess., [1968] U.S.C.Cong. & Admin.N., pp. 2114, 2202:

> "The existing Federal controls over interstate and foreign commerce in firearms are not suffcient to enable the States to effectively cope with the firearms traffic within their own borders through the exercise of their police power. Only through adequate Federal control over interstate and foreign commerce in firearms, *and over all persons engaging in the business of importing, manufacturing, or dealing in firearms*, can this problem be dealt with . . . . (Emphasis added.)

> . . . . . .

> "The prohibition [of § 922(a) (1)] goes to both an unlicensed person engaging in a firearms business and such a person who, in the course of that business, ships, transports, or receives, a firearm or ammunition in interstate or foreign commerce. Thus, the [section] makes it clear that a license is required for an intrastate business as well as an interstate business."

See also H.R.Rep. No. 1577, 90th Cong., 2d Sess., [1968] U.S.C.Cong. & Admin. N., p. 4418:

> "[Section 922(a) (1)] makes it clear that a license is required for an intrastate business as well as an interstate business."

The convictions must be sustained even though there was no showing that appellants' dealing in firearms was in interstate or foreign commerce.

■ Appellant Ruisi contends that the statute requires that the government establish that he knew his act of unlicensed dealing in firearms was in violation of federal law, and that his conviction must be reversed because the district court found he did not know he was violating federal law. However the statute does not require that the government establish, as an element of the crime, that the person charged with unlicensed dealing knew of the law. Congress did not make ignorance of the law a defense in a prosecution for unlicensed dealing in firearms. Compare 18 U.S.C. § 922(f) (1970). See *United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463, 466 (2d Cir.), cert. denied, 404 U.S. 983, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). There is no constitutional requirement that scienter be established as an element of the crime nor will Congress be presumed from silence to have intended to make it so when the purpose of the statute is to regulate objects or activities which in and of themselves are dangerous or harmful. See *United States v. Dotterweich*, 320 U.S. 277, 280–81, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *Morissette v. United States*, 342 U.S. 246, 250–61, 72 S.Ct. 240, 96 L. Ed. 288 (1952); *United States v. Freed*, 401 U.S. 601, 609, 91 S.Ct. 1112, 28 L.Ed. 2d 3561 (1971) ("This is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act") (footnote omitted). As the Supreme Court recently said in *United States v. International Minerals & Chemical Corp.*, 402

U.S. 558, 565, 91 S.Ct. 1697, 1703, 29 L. Ed.2d 178 (1971):

> "But where, as here and as in . . . *Freed,* dangerous or deleterious devices or products . . . are involved, the probability of regulation is so great that anyone who is aware that he is . . . dealing with them must be presumed to be aware of the [law]."

Given the dangerous nature of the objects regulated by § 922(a) (1) a congressional intent to provide that ignorance of the law is a defense will not be presumed, and appellant Ruisi's conviction is affirmed.

 Appellants' final contention—that a one year delay between the arrest and the indictment warrants dismissal of the indictment—is without merit. The appellants have alleged no specific prejudice arising from the delay, but merely that they suffered "obloquy, . . . disgrace and . . . intangible economic consequences . . . ." Allegations of prejudice such as these are insufficient. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); United States ex rel. Schaedel v. Follette, 447 F.2d 1297 (2d Cir. 1971); United States v. DeMasi, 445 F.2d 251 (2d Cir.), cert. denied, 404 U.S. 882, 92 S.Ct. 211, 30 L.Ed.2d 164 (1971). Cf. United States v. Binder, 453 F.2d 805 (2d Cir. 1971).

In view of the sentence imposed and of certain remarks of Chief Judge Mishler in the course of the trial, the question of why the government chose to prosecute these cases inevitably arises. The record does not reveal any reason for doing so. Appellants have apparently not been engaged in any previous criminal activity, and were at all times cooperative with the federal authorities. This felony conviction could constitute a severe penalty, since it might result in the revocation of the license to deal in firearms, as well as in other possible disabilities. Unless there is some justification of which we are unaware for undertaking this prosecution for what

appears to be a mere technical violation of the statute, Chief Judge Mishler's suggestion of an application for a Presidential pardon would seem to be justified.