**Sam Frank MANDINA, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 72–1474.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1973.

Decided Feb. 8, 1973.

David F. Yates, St. Louis, Mo., for appellant.

Joel S. Gallay, Atty., Crim. Div., U.S. Dept. of Justice, Washington, D. C., for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal presents the question of whether 18 U.S.C. § 922(a)(1) requires as an essential element of the offense of unlawful dealing in firearms or ammunition an allegation and proof such activities were in interstate or foreign commerce. Appellant (Mandina) asserts in the alternative that if the statute applies to wholly intrastate activities then Congress has exceeded its constitutional authority and the statute is unconstitutional.

Mandina was charged by indictment with engaging "in the business of dealing in firearms and ammunition without being licensed to do so." After an initial plea of not guilty to the charge, Mandina informed the trial court that he desired to change his plea to guilty but preserve his right to challenge on appeal the constitutionality of § 922(a)(1). By leave of court, Mandina moved to dismiss the indictment on the grounds previously mentioned. The motion was denied and Mandina, upon his plea of guilty, received a sentence of 5 years.

STATUTORY INTERPRETATION

The gun control statute in question reads:

§ 922. Unlawful acts

(a) It shall be unlawful—

(1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce;

The indictment did not make any reference to Mandina's activities as a dealer as having been conducted in interstate commerce. Mandina contends that in order to charge a violation under the section, there must be a specific allegation that the unlawful activities were in

interstate commerce. Appellant's construction of the statute is, therefore, that the qualifying phrase "in interstate or foreign commerce" applies to engaging in the business of importing, manufacturing or dealing, as well as shipping, transporting or receiving firearms. Under this construction, an unlicensed dealer whose business encompassed solely intrastate sales of firearms and ammunition would not be a violation of the statute.

Mandina relies upon United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), where the Supreme Court was required to interpret § 1202 (a)(1) of the Omnibus Crime Control and Safe Streets Act of 1968. Section 1202(a)(1) provided that anyone convicted of a felony "and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm . . . ." The specific question before the Court was whether the Government must allege and prove that a felon possessing a firearm did so "in commerce or affecting commerce." The Court held that the qualifying phrase "in commerce or affecting commerce" applied to the entire antecedent phrase "receives, possesses or transports" and not solely to "transports." In so holding the Court determined that the statute was ambiguous and the underlying legislative history meager and unclear, and adopted "the natural construction of the language."

■ Unlike the statute in *Bass*, § 922 (a)(1) is not ambiguous nor is its underlying legislative history equivocal. It is stated in the disjunctive and contains two clearly separate prohibitions.

Qualifying words or clauses refer to the next preceding antecedent except when evident sense and meaning require a different construction. K. Llewellyn, The Common Law Tradition, 527 (1960). The first phrase prohibits the engaging in the business of importing, manufacturing or dealing in firearms or ammunition without a license. The second proscribes the shipping, transport or receipt of firearms or ammunition in interstate or foreign commerce by an unlicensed importer, manufacturer or dealer.

Additionally, the legislative history of § 922(a)(1) specifically shows that Congress intended to proscribe unlicensed intrastate dealing in firearms. "Thus, [Section 922(a)(1)] makes it clear that a license is required for an intrastate business as well as an interstate business." H.R.Rep.No.1577, 90th Cong.2d Sess., 1968 U.S.Code Cong. & Admin. News, p. 4418. See also, S.Rep.No.1097, 90th Cong.2d Sess., 1968 U.S.Code & Admin.News, pp. 2114, 2202.

■ We hold that § 922(a)(1) prohibits unlicensed intrastate dealing in firearms or ammunition and that a showing that Mandina's dealings in firearms were in interstate or foreign commerce was not required.[1] *Accord*, United States v. Redus, 469 F.2d 185 (CA9 1972) and United States v. Ruisi, 460 F.2d 153 (CA2 1972). See also United States v. Fancher, 323 F.Supp. 1069 (D.S.D.1971) and United States v. Gross, 313 F.Supp. 1330 (S.D.Ind.1970). For a similar holding under § 922(a)(6) see United States v. O'Neill, 467 F.2d 1372 (CA2 1972); United States v. Nichols, 466 F.2d 998 (CA5 1972), and United

---

1. Appellant points out that an "importer" under the Act is defined as one who brings firearms, or ammunition into the United States for purposes of sale or distribution. § 921(a)(9). It must be conceded, therefore, that a redundancy was created between the two clauses of § 922 (a)(1), since an importer by definition necessarily is engaging in foreign commerce. This redundancy does not affect, however, the other two classes within the statute; manufacturers and dealers.

Furthermore, in enacting § 922(a)(1), Congress was extending to intrastate dealings the prohibitions of the 1938 Federal Firearms Act (15 U.S.C. §§ 901–910, repealed June 19, 1968, Pub.L. 90–351) which required licensing of dealers and manufacturers who shipped firearms and ammunition in interstate or foreign commerce. It appears that Congress, in § 922(a)(1), merely added the first phrase of this section to the general prohibition stated in 15 U.S.C. § 902(a).

States v. Garner, 465 F.2d 265 (CA7 1972).

## CONSTITUTIONALITY OF § 922 (a)(1)

Mandina also contends that if § 922 (a)(1) applies to dealers who deal exclusively in intrastate commerce, it is unconstitutional.

 Congress may impose criminal sanctions for the purpose of regulating purely intrastate activities which substantially affect interstate commerce. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) and United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). Congress may consider the cumulative impact on commerce of those activities as a class and once it is determined that a given class of intrastate activities substantially affects interstate commerce, specific proof that an isolated activity with the class sought to be regulated need not be shown. Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) and Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). See United States v. Dawson, 467 F.2d 668 (CA8 1972). And if Congress had (1) a rational basis for its finding that the activity affects commerce and (2) the means selected to combat the evil are reasonable and appropriate, our constitutional inquiry is at an end. *Heart of Atlanta Motel, Inc.,* *supra,* 379 U.S. at 258, 85 S.Ct. 348 and *Dawson, supra,* 467 F.2d at 671.

 The legislative history underlying the Gun Control Act of 1968 is extensive and clearly discloses the Congress' concern for the "increasing rate of crime and lawlessness and the growing use of firearms in violent crime." "The subject legislation responds to widespread national concern that existing Federal control over the sale and shipment of firearms [across] State lines is grossly inadequate." [2] 1968 U.S.Code Cong. & Admin.News, *supra,* at 4410–4435. Congress specifically found that:

The existing Federal controls over interstate and foreign commerce in firearms are not sufficient to enable the States to effectively cope with the firearms traffic within their own borders through the exercise of their police power. Only through adequate Federal control over interstate and foreign commerce in firearms, and over all persons engaging in the business of importing, manufacturing, or dealing in firearms, can this problem be dealt with . . . 1968 U.S.Code Cong. & Admin.News, *supra,* at 2114.

Congress chose to require federal licenses of all importers, manufacturers and dealers in firearms and ammunition. The Act requires these persons to maintain records of sales. From this, "it will be possible to develop valid analyses of the use and distribution of firearms and ammunition in the country," "deter individuals intending to act unlawfully who will be reluctant to identify themselves" and "to provide law enforcement officials with information useful in investigations." We cannot say that Congress did not have a rational basis for its findings that the firearms and ammunition traffic has a substantial affect upon commerce or that the means selected to combat the object of its concern was inappropriate or unreasonable. Indeed, it is apparent that one of the most logical means by which to prevent interstate use of firearms and ammu-

---

**2.** Handguns, rifles, and shotguns have been the chosen means to execute three-quarters of a million people in the United States since 1900. The use of firearms in violent crimes continues to increase today. Statistics indicate that 50 lives are destroyed by firearms each day. In the 13 months ending in September 1967 guns were involved in more than 6,500 murders, 10,000 suicides, 2,600 accidental deaths, 43,500 aggravated assaults, and 50,000 robberies. No civilized society can ignore the malignancy which this senseless slaughter reflects. 1968 U.S.Code Cong. & Admin.News, *supra,* at 4413.

nition for illegal purposes is to control their source by licensing the importers, manufacturers and dealers. See United States v. Nelson, 458 F.2d 556, 559 (CA5 1972).

Section 922(a)(1) is a valid exercisement by Congress of its power under the commerce clause.

Affirmed.