**UNITED STATES of America**

v.

**Thaddeus M. TAYLOR, a/k/a Popeye, and Freddie J. Cameron, a/k/a Federal Fred, Defendants.**

**No. 3:95–cr–3 (DJS).**

United States District Court, D. Connecticut.

Sept. 5, 1995.

**MEMORANDUM OPINION AND ORDER**

SQUATRITO, District Judge.

Defendants Taylor and Cameron are charged in a thirty-three count superseding indictment with the violation of various federal statutes relating to the possession and sale of firearms, conspiracy to violate federal law, and giving false statements to agents of the Bureau of Alcohol, Tobacco and Firearms. On August 7 Defendant Cameron filed a motion to dismiss the indictment, arguing that each count against him alleges a violation of a federal statute or statutes that is unconstitutional because the laws lack basis "under the commerce clause or otherwise." Cameron's motion relies exclusively on *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), a recent case holding the Gun–Free School Zones Act of 1990 an unconstitutional exercise of federal legislative power. Defendant Taylor subsequently moved to join Cameron's motion, although he has not submitted any argument advanced at the charges pertaining to only himself.[1] For the reasons that follow, the motion will be denied.

## I. DISCUSSION

### 1. *United States v. Lopez*

In *Lopez* the defendant possessed a handgun on the grounds of a Texas high school. Following his arrest, the defendant was charged with and convicted of violating the Gun–Free School Zones Act of 1990, which prohibits the possession of a firearm "at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(2)(A). On appeal the defendant challenged his conviction on the grounds that Congress had exceeded its authority under the Commerce Clause in enacting the statute. The Fifth Circuit agreed and reversed his conviction. *United States v. Lopez*, 2 F.3d 1342 (5th Cir.1993). The Supreme Court affirmed.

Richard R. Brown, Christopher J. McCarthy, Brown, Paindiris & Zarella, Hartford, CT, for Thaddeus M. Taylor.

C. Thomas Furniss, Furniss & Quinn, Hartford, CT, Freddie J. Cameron.

David A. Ring, U.S. Attorney's Office, Hartford, CT, Christopher F. Droney, John H. Durham, U.S. Attorney's Office, New Haven, CT, for the U.S.

1. The conspiracy charge, Count One of the superseding indictment, names both defendants. Counts Two and Three, which allege violations of 18 U.S.C. §§ 922(a)(1)(A) and 922(g), respectively, pertain solely to Cameron, while the remaining counts, charging violations of 18 U.S.C. §§ 924(h), 924(b) and 1001, are brought exclusively against Taylor.

Much of the *Lopez* opinion is devoted to a review of the history of the Commerce Clause and its operation as a restraint on legislative authority. The Court reaffirmed the long-recognized proposition that

> The power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce.

*United States v. Darby*, 312 U.S. 100, 118, 61 S.Ct. 451, 459, 85 L.Ed. 609 (1941). The Court, however, also echoed the warning that

> the scope of the interstate commerce power "must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government."

*Lopez*, ── U.S. at ──── ──, 115 S.Ct. at 1628–29 (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893 (1937)). Given the important interests at stake in the outcome of the analysis of any given reach of Congressional authority, the Court noted its traditional duty to "undertake[ ] to decide whether a rational basis existed for concluding that a regulated activity sufficiently affected interstate commerce." *Lopez*, ── U.S. at ──, 115 S.Ct. at 1629 (citing cases).

The Court also affirmed the existence of three broad areas of activity that Congress could regulate under the Commerce Clause:

(1) the channels of interstate commerce; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) activities which have "a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." *Id.* at ──── ──, 115 S.Ct. at 1629–30 (citations omitted).

Turning to the statute at issue the Court found that Congress' power to enact 922(q) had to be found in the third category. *Id.* at ──, 115 S.Ct. at 1629. Reviewing the statute under that category, the Court held that the law did not regulate an activity that substantially affected interstate commerce. Specifically, the Court held that 922(q) "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at ──── ──, 115 S.Ct. at 1630–31.[2] The Court observed further that the language of 922(q) contained no jurisdictional element "which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at ──, 115 S.Ct. at 1631. The Court also noted that Congress had failed to make findings on whether § 922(q) was within its Commerce Clause authority. *Id.*[3]

### 2. 18 U.S.C. § 922(g)

 The third count of the superseding indictment charges Cameron with violating § 922(g), which declares it unlawful for:

> any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to possess in or affecting interstate commerce, any firearm or ammunition.

---

**2.** The Court held that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially effect any sort of interstate commerce." *Id.* at ──, 115 S.Ct. at 1634.

**3.** The Court stated that, although "Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce," such findings assist courts in evaluating whether the regulated activity "sub-

stantially affects" interstate commerce where the effect on commerce is not obvious. *Lopez*, ── U.S. at ──── ──, 115 S.Ct. at 1631–32. Moreover, the Court refused to examine Congressional findings regarding prior federal firearms legislation because § 922(q) " 'represent[ed] a sharp break with the long-standing pattern' " of such legislation. *Id.* at ──, 115 S.Ct. at 1632 (quoting *Lopez*, 2 F.3d at 1366).

The defendants argue that the theory upon which *Lopez* is based requires this court to find § 922(g) unconstitutional because the statute has no nexus with interstate commerce or a " 'jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce.' " (Def.'s Mem., filing 98, at 7 (quoting *Lopez,* —— U.S. at ——, 115 S.Ct. at 1631)). The court does not agree.

The felon-in-possession statute at issue in this case bears some resemblance to the statute held unconstitutional in *Lopez. See United States v. Brown,* 893 F.Supp. 11, 12 (M.D.N.C.1995) (noting that "§ 922(g)(1), like 922(q), is a criminal statute that by its terms has nothing to do with commerce or any sort of economic activity"). What is different about 922(g), however, is the presence of an "express jurisdictional element" that the Court found lacking in *Lopez.*

The *Lopez* Court cited to *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), as providing an example of a statute containing the requisite jurisdictional element sufficient to ensure the limited reach of the statute "to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *See Lopez,* —— U.S. at ——, 115 S.Ct. at 1631. In *Bass* the Court held that the "possession" component of 18 U.S.C. app. § 1202, the statutory predecessor to 922(g), required some nexus with interstate commerce. 404 U.S. at 350, 92 S.Ct. at 523–24.[4] Although the Court construed the statute narrowly in reaching this holding, it also noted that, "given the evils that prompted the statute and the basic legislative purpose of restricting the firearm-related activity of convicted felons," the resulting burden on the government of proving this nexus in any given case appropriately was not narrow. *Bass,* 404 U.S. at 351, 92 S.Ct. at 524. In *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Court revisited this issue and held that the statute required only "the minimal nexus

that the firearm have been, at some time, in interstate commerce." *Id.* at 575, 97 S.Ct. at 1969; *see also United States v. Carter,* 981 F.2d 645, 647 (2d Cir.1992) ("In the context of firearm control, it is well established that for a firearm to fall within the Commerce Clause, it need only have travelled previously in interstate commerce"), *cert. denied,* —— U.S. ——, 113 S.Ct. 1827, 123 L.Ed.2d 456 (1993).

This court concludes, as have many courts that have addressed the issue in the wake of *Lopez,* that the jurisdictional requirement in § 922(g) that the firearm at some time had traveled in interstate commerce is sufficient to establish the constitutionality of the statute under the Commerce Clause. *See United States v. Hanna,* 55 F.3d 1456, 1462 & n. 2 (9th Cir.1995); *United States v. Edwards,* 894 F.Supp. 340, 341–43 (E.D.Wis.1995); *United States v. Bramble,* 894 F.Supp. 1384, 1396–97 (D.Haw.1995); *United States v. Williams,* 893 F.Supp. 617 (S.D.W.Va.1995); *United States v. Tripp,* No. 94cr0567, 1995 WL 417591, at *2 (N.D.Ill. July 13, 1995); *United States v. Campbell,* 891 F.Supp. 210, 211–12 (M.D.Pa.1995); *Brown, supra,* 893 F.Supp. at 12. *See also United States v. Collins,* 61 F.3d 1379, 1383–84 (9th Cir.1995).

### 3. 18 U.S.C. § 922(a)(1)(A)

Count Two of the indictment charges Cameron with unlawful dealing in firearms. The statute declares it unlawful for:

> any person ... except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

18 U.S.C. § 922(a)(1)(A). Other than his general *Lopez*-based attack on the entire indictment, Cameron does not directly challenge Congress' power to regulate this activity, but, rather, argues that the count based on 922(a)(1)(A) "simply does not charge

---

**4.** "Absent proof of some interstate commerce nexus in each case, [the statute] dramatically intrudes upon traditional state criminal jurisdiction.... Absent a clearer statement of intention

from Congress than is present here, we do not interpret [the statute] to reach the 'mere possession' of firearms." *Bass,* 404 U.S. at 350, 92 S.Ct. at 524.

[Cameron] with violating the statute it refers to." Presumably, the defendant takes issue with this charge because it is expressly limited to activity solely within the District of Connecticut.[5]

In *United States v. Ruisi,* 460 F.2d 153, 155 (2d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972), the Second Circuit held that *Bass* did not mandate a reading of this statute as requiring the "dealing" language to mean "dealing in interstate commerce." After examining the language of the statute, which was unambiguous, and the legislative history, which indicated that Congress intended to reach purely intrastate transactions, the court held that the statute did not require a showing that the dealing in firearms be in interstate or foreign commerce. *Id.* at 156. Although *Ruisi* did not explicitly find that Congressional authority reached this kind of activity, other courts have so held. *See, e.g., Mandina v. United States,* 472 F.2d 1110, 1113 (8th Cir.) ("We cannot say that Congress did not have a rational basis for its findings that the firearms and ammunition traffic has a substantial affect upon commerce or that the means selected to combat the object of its concern was inappropriate or unreasonable"), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973); *United States v. Day,* 476 F.2d 562, 566–67 (6th Cir.1973) (noting that legislative history "reveals detailed findings of the interrelationship between the business of selling guns and interstate crime and interstate trafficking in guns"); *see also United States v. Hornbeck,* 489 F.2d 1325,

1326 (7th Cir.1973) (per curiam) ("well established that Congress may impose criminal sanctions for the purpose of regulating purely intrastate activities which substantially affect interstate commerce"), *cert. denied,* 416 U.S. 907, 94 S.Ct. 1614, 40 L.Ed.2d 112 (1974). Because this court agrees that such regulation is within Congress' power under the Commerce Clause, the defendants' attack on § 922(a)(1)(A) fails. *Cf. Lopez,* ― U.S. at ――, 115 S.Ct. at 1631 (noting that Congress can regulate "activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce").

### 4. 18 U.S.C. § 371

Defendants' motion also challenges the conspiracy count on the basis that the count does not allege a nexus between the acts alleged and interstate commerce. (Def.'s Mem., filing 98, at 8–9). The government defends the charge on the ground that the various objects of the alleged conspiracy are violations of federal law and defends each as a valid exercise of Commerce Clause authority. The defendants have not taken issue with the government's position, which seems axiomatic.[6] Thus, the court will examine each statute at issue in the alleged conspiracy to determine whether there is a constitutional basis for congressional regulation.[7]

### a. 18 U.S.C. § 924(b)

Count One alleges the violation of 18 U.S.C. § 924(b), which is set out below,[8] as

---

5. Count Two of the indictment charges:
 Between on or about December 1, 1993, and on or about February 5, 1994, in the District of Connecticut, defendant FREDDIE CAMERON did willfully and unlawfully engage in the business of dealing in firearms without a license.

6. To hold otherwise would take the implications of *Lopez* beyond their logical bounds. Such a holding would prohibit the federal government from policing the violation of inchoate crimes altogether.

7. Taylor is charged with violations of §§ 924(b) and 924(h) in Counts Four through Twenty–Nine of the indictment. Because the court concludes that these statutes are within Congress Commerce Clause authority in its discussion of the conspiracy count, it will not discuss these charges as they relate specifically to Taylor.

8. The statute denounces anyone who
 with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce....
 18 U.S.C. § 924(b). The indictment alleges the violation of several state laws as the requisite "offense[s] punishable by imprisonment for a term exceeding one year." Although the issue has not been explicitly raised by the parties, the court finds the legislative scheme contemplates the violation of state law. *See* 18 U.S.C. § 921(a)(20); *United States v. McLemore,* 28 F.3d 1160, 1164 (11th Cir.1994) ("section 924(b) shows that Congress ... was not concerned with

an element of the conspiracy. This statute criminalizes the movement of firearms in interstate commerce with the intent to use the firearms in an "offense punishable by imprisonment for a term exceeding one year." Since the law, on its face, regulates an item in interstate commerce, the court has no doubt regarding Congress' ability to regulate it. *See Lopez*, ―― U.S. at ――, 115 S.Ct. at 1629 ("Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"). Moreover, the statute includes the requirement of a case-by-case showing of a nexus between the intrastate activity and interstate commerce. *See United States v. Robinson*, 62 F.3d 234, 236–37 (8th Cir.1995) (reaching similar conclusion regarding federal carjacking statute).

**b. 18 U.S.C. § 924(h)**

■ The second element of the alleged conspiracy is the violation of 18 U.S.C. § 924(h), which provides:

> Whoever knowingly transfers a firearm, knowing that such firearm will be used to commit a crime of violence (as defined in subsection (c)(3)) or drug trafficking crime (as defined in subsection (c)(2)) shall be [guilty of an offense against the United States].

As the Fifth Circuit observed, "[t]here is no requirement that the transfers have an interstate character or that the firearms have been in interstate commerce." *Lopez*, 2 F.3d at 1358. Under *Lopez*, therefore, the statute is constitutional only if there is a rational basis for finding that the regulated activity substantially affects interstate commerce.

The government points out that the defendants are alleged to have conspired to violate only the "drug trafficking" aspect of § 924(h), and that, because this aspect of the offense is specifically linked to the violation of other federal laws,[9] Congress' power derives from its ability to criminalize acts relating to the commission of other federal crimes. (Gov't Mem. in Opp'n, filing 100, at 8). The government then argues that, this being the case, the court cannot invalidate § 924(h) unless it also invalidates the federal drug trafficking laws.

. This court has no difficulty concluding that the federal narcotics trafficking laws remain firmly within Congress' Commerce Clause power. *See, e.g., United States v. Gonzalez*, 893 F.Supp. 935, 935–37 (S.D.Cal.1995). This conclusion, however, does not end the inquiry, for the issue is not whether Congress can regulate narcotics trafficking, but whether the activity at issue in this case is sufficiently related to that regulation or has some other independent basis in the Constitution.

Instructive in this regard are cases interpreting 18 U.S.C. § 924(c), which prohibits, *inter alia*, the possession of a firearm during the commission of a drug trafficking offense. Courts examining this statute have found that the requisite nexus with interstate commerce is found in the underlying federal offense. *See, e.g., United States v. Owens*, 996 F.2d 59, 61 (5th Cir.1993); *United States v. Grafton*, No. 1:95CR131FMH, 1995 WL 506001, at *4 (N.D.Ga. Aug. 15, 1995); *United States v. Torres*, No. S294CR466(JFK), 1995 WL 459247, at *2 (S.D.N.Y. Aug. 2, 1995); *see also Lopez*, 2 F.3d at 1348 n. 10 (discussing jurisdictional basis of some legislation as founded in jurisdictional basis of other, related legislation); *United States v. McLemore*, 28 F.3d 1160, 1164 (11th Cir. 1994) ("there is no interstate commerce or other federal nexus involved in section 924(h), save for the possible requirement that the underlying crime be federal in nature").

Section 924(h) prohibits the actual transfer of the firearm rather than the mere possession of the firearm during a drug trafficking offense. *See United States v. Nelson*, 458 F.2d 556, 559 (5th Cir.1972) (holding the "acquisition of firearms is more closely related to interstate commerce than mere posses-

firearm transactions solely in connection with federal crimes").

**9.** Section 924(c)(2) defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the

Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. 1901 *et seq.*)."

sion"). The statute, therefore, reaches the other side of a § 924(c) transaction. Whereas the statute at issue in *Lopez* sought to regulate an activity which by its nature was purely intrastate and could not substantially affect commerce even when incidents of those activities aggregated, *see* —— U.S. at ——, 115 S.Ct. at 1631, this statute regulates the provision of firearms to those engaged in drug trafficking offenses, which by their very nature are crimes affecting interstate commerce. In these circumstances the court holds that § 922(h) is a valid exercise of congressional authority under the Commerce Clause to regulate "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1631.

**c. 18 U.S.C. § 922(d)(1)**

■ The final statute at issue in the conspiracy count is 18 U.S.C. § 922(d)(1), which declares it:

> unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year. . . .

The government does not explicitly defend this statute in its memorandum opposing the defendants' motion to dismiss the indictment, other than the disappointingly similar but less understandable approach taken by the defendants, i.e., a general discussion of the implications of the *Lopez* decision. Since 922(d)(1) can be viewed as simply the other side of a 922(g) transaction, this approach may derive from confidence in the constitu-

tionality of 922(g). Indeed, where the government should be defending 922(d)(1), it defends 922(g). (*See* Gov't Mem. in Opp'n, filing 100, at 7 ("Count One of the Indictment charges defendants Taylor and Cameron with conspiring to violate Sections 924(b), 922(g) and 924(h).")). The presence of a jurisdictional element in 922(g) and not in 922(d)(1), however, indicates that the two statutes are not simply mirror images of one another.[10]

Nevertheless, the court concludes that § 922(d)(1) is a valid exercise of congressional law-making authority. This statute evolved from a prior enactment that criminalized the same behavior by federal licensees. *See United States v. Lopez,* 2 F.3d 1342, 1354 (5th Cir.1993) (extensively reviewing legislative history). This court agrees with the Fifth Circuit's reading of the legislative history as indicating "that Congress determined that regulation of all transferors to disqualified persons, not just federal licensee transferors, was necessary to prevent evasion of the regulation of federal licensees." *Id.* Because no reason has been presented to call this legislative judgment into question, this court finds § 922(d)(1) withstands the defendants' motion. *Cf. Lopez,* —— U.S. at ——, 115 S.Ct. at 1631 (recognizing Congress' ability to regulate "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated").

**d. 18 U.S.C. § 1001**

■ Defendants seem to be under the impression that the conspiracy count also involves the alleged violation of 18 U.S.C. § 1001.[11] The indictment is clear, however, in alleging a conspiracy to violate only 18 U.S.C. §§ 922(d)(1), 924(b) and 924(h). Defendant Taylor, however, is charged with vio-

---

**10.** Under the existing statutory scheme, if the government could not show the possession of a firearm by a convicted felon was "in or affecting interstate commerce" it could not prosecute a felon under § 922(g). Nothing in § 922(d)(1), however, prevents charging the person who sold "or otherwise dispose[d]" of the firearm to the same felon.

**11.** This statute denounces

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry. . . .

18 U.S.C. § 1001

lating § 1001 in Counts Thirty through Thirty-Three, and these violations also are alleged as overt acts in support of the conspiracy alleged in Count One. To clarify any ambiguity in the record, therefore, the court will address defendants' challenge to the statute.

To the extent the defendants are attacking this statute as falling outside the boundary of the Commerce Clause, they may be correct. The court finds, however, that, because the first sentence of the statute limits its application to matters "within the jurisdiction of any department or agency of the United States," the law is firmly grounded in Congress' authority "to make all Laws which shall be necessary and proper for carrying into Execution ... other Powers vested ... in the Government of the United States or in any Department of Officer thereof." U.S. Const., Art. 1, § 8, cl. 18. Since the court has held that the "matters" forming the basis of the indictment properly are within the ambit of federal jurisdiction, the defendants' motion to dismiss these charges also is denied.

## II. CONCLUSION

For the reasons stated above, the motion to dismiss (**document # 97**) is **DENIED**.

It is so ordered.

