UNITED STATES of America,
Plaintiff,

v.

Andrew ACOSTA, Pedro Martinez, Antonio Mendez, Larry Olson, and Wilfredo Vasquez, Defendants.

No. 98–CR–104.

United States District Court,
E.D. Wisconsin.

Nov. 29, 2000.

Karine Moreno–Taxman, David Robles, U.S. Attorney's Office, Milwaukee, WI, for United States.

Gregory Parr, Milwaukee, WI, for Andrew Acosta.

Patrick Blegen, Plainfield, IL, for Wilfredo Vasquez.

Dianne Erickson, Milwaukee, WI, for Pedro Martinez.

Matt Ricci, Milwaukee, WI, for Larry Olson.

Dale Nickolay, for Antonio Mendez.

### DECISION AND ORDER RE: COUNT TWENTY–FIVE

ADELMAN, District Judge.

Count twenty-five of the second superseding indictment accuses defendant Larry Olson of violating 18 U.S.C. § 924(h) by knowingly transferring a firearm in or around May 1996, knowing that such firearm would be used in a "crime of violence." The crime of violence charged is "the attempted Murder of Christopher Rivera as alleged in Predicate Act # 38 of Count One." I have indicated to the parties my concern over whether I have jurisdiction over this offense and whether it is constitutional as charged because no federal nexus seems apparent. The parties have responded with briefing on the matter, and I have chosen to decide it before the case goes to the jury.

If count twenty-five is indeed based on a federal crime of violence, no further inquiry is necessary. Thus, I must determine whether "the attempted Murder of Christopher Rivera as alleged in Predicate Act # 38 of Count One" sets forth a federal crime. Racketeering act # 38 of count one of the indictment states that in and around May 1996 Wilfredo Vasquez and others attempted to kill Rivera in violation of Wis. Stat. §§ 940.01, 939.32, and 939.05. The government contends that the attempted murder of Christopher Rivera is a crime of violence that may be prosecuted in a court of the United States because it "serves as Racketeering Act # 38 in connection with the substantive RICO count" and is an attempted murder punishable under 18 U.S.C. § 1959(a)(5). (Br. Re: Jurisdictional Basis for Count Twenty–Five at 6.) To "alleviate any concerns," the government indicates it could call a witness to address the fact that the firearm in question traveled in interstate commerce. (See id. at 6 n. 1.)

The government attempts to bootstrap a state law crime of violence into a federal crime merely because the state law crime is connected to a Racketeer Influenced and Corrupt Organizations (RICO) charge. The indictment, however, does not charge Olson with the crime of violence of RICO, through predicate act # 38 in particular. It instead charges him with the crime of violence of attempted murder set forth in predicate act # 38—and in fact the attempted murder is only a part of predicate act # 38, which includes conspiracy to commit murder as well. The reference to "of Count One" in the language "the attempted Murder of Christopher Rivera as alleged in Predicate Act # 38 of Count One," reasonably is read merely to identify where predicate act # 38 can be found in the indictment, not to somehow incorporate all of count one's federal aspects into the crime of violence. As the indictment is reasonably interpreted, Olson is not charged with knowingly transferring a firearm knowing that the firearm would be used by Vasquez to commit a RICO crime. Instead, he is charged with knowingly transferring a firearm knowing that the firearm would be use to commit a crime of attempted murder—and attempted murder, as predicate act # 38 itself states, is a state law crime. The attempted murder of Rivera may constitute a predicate act, but that means only that it is an element of a federal crime, not a federal crime itself. In other words, the fact that the predicate act referenced in count twenty-five may be one element of a RICO crime is not

enough to make the act itself a crime punishable in federal court.

Further, the government also cannot rely upon its one-sentence contention that the attempted murder could be prosecuted in federal court under 18 U.S.C. § 1959(a)(5). That contention requires inclusion of elements that are not charged in predicate act # 38 (or even the indictment), regarding the attempted murder of Rivera. Predicate act # 38b charges Vasquez and others with the May 1996 attempted murder of Rivera, under state law, on South 16th Street in Milwaukee. The only additional factual description of this crime is in part # 38a, which indicates that someone used a firearm to shoot at Rivera on or about May 19, 1996. Count one otherwise indicates that Vasquez is charged with committing the attempted murder of Rivera as a part of the conducting of and participating in the conduct of the affairs of the Latin King enterprise through a pattern of racketeering activity. Title 18 U.S.C. § 1959 requires, however, that Vasquez have committed the attempted murder "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from the Latin King enterprise," or "for the purpose of gaining entrance to or maintaining or increasing position in the [Latin King] enterprise." That element is not alleged in predicate act # 38, and the government has failed to point out where else in the indictment it may be, let alone argue that those portions can somehow be read into what is charged in count twenty-five. Again, count twenty-five references as the crime of violence the *attempted murder* set forth in predicate act # 38, and predicate act # 38 indicates that the attempted murder is the type chargeable under Wisconsin statutes, which do not include all the elements of § 1959.

Therefore, the crime of violence referenced in count twenty-five can only be considered a state law crime of violence. Thus, the count survives only if 18 U.S.C. § 924(h) includes, or can include, state law crimes of violence. Where, as here, the alleged state law crime of violence is attempted murder, *United States v. McLemore*, 28 F.3d 1160 (11th Cir.1994), is on point.

In *McLemore*, the Eleventh Circuit analyzed the language of § 924(h) itself as well as in context with the remainder of § 924. Finding the language unclear, the legislative history sparse and not dispositive, and the statutory scheme unhelpful, the court found the statute ambiguous as to whether state law crimes were included as crimes of violence. Because it found that Congress had not plainly and unmistakably included state law crimes under § 924(h), it applied the rule of lenity and dismissed an indictment that was based on a state law crime of solicitation to commit murder. *See id.* at 1164–65.

The government contends that *McLemore* wrongly found § 924(h) to be ambiguous and thus was wrongly decided. I therefore must look at the statute myself.

Section 924(h) states that "[w]hoever knowingly transfers a firearm, knowing that such firearm will be used to commit a crime of violence (as defined in subsection (c)(3)) or drug trafficking crime (as defined in subsection (c)(2)) shall be imprisoned . . . ." Subsection (c)(3), in turn, states that

For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Nothing in this definition explicitly states whether such crimes of violence are to be state or federal crimes, or both, in contrast to the definition of "drug trafficking crime," which includes only felonies punishable under certain federal drug laws.

18 U.S.C. § 924(c)(2). Under the government's reading of these sections, then, § 924(h) applies to both state and federal crimes of violence, but only federal drug offenses.

There is no argument that parts (A) and (B) of the definition of "crime of violence" are unambiguous and that attempted murder meets either or both parts. The Eleventh Circuit, however, found an ambiguity via the introductory phrase of subsection (c)(3): that "[f]or purposes of this subsection the term 'crime of violence' means ...." The subsection referred to is, of course, § 924(c). *See McLemore*, 28 F.3d at 1162–63. Section 924(c)(1)(A) uses the definition of crime of violence as follows: "any person who, during and in relation to any crime of violence ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be sentenced to imprisonment in addition to that imposed for the underlying crime.

The government here essentially contends that the Eleventh Circuit rewrote subsection (c)(3) by reading in the limitation of federal prosecution from subsection (c)(1)(A). The government argues that Congress very well may have intended to cover more conduct for the "transfer" of a firearm as opposed to mere use or possession. (*See* Br. Re: Jurisdictional Basis for County Twenty–Five at 4–5.)

The Eleventh Circuit did not impermissibly read a limitation from § 924(c)(1) into § 924(h), however. Instead, it found that "the reference by section 924(c)(3) to section 924(c)(1), which contains the relevant limiting language, makes the language of the statute unclear on its face as to the scope of the term 'crime of violence' in section 924(h)." *McLemore*, 28 F.3d at 1163 n. 3. More importantly, however, the court found that in the context of the statutory scheme whether § 924(h) includes state law crimes of violence becomes even more unclear.

■ When interpreting statutes, words take their meaning from the context in which they appear. *United States v. Thomas*, 77 F.3d 989, 990 (7th Cir.1996). I agree with the Eleventh Circuit that especially in the context of the whole section, § 924(h) is unclear as to whether it includes state law crimes of violence. The reference in subsection (c)(3) to (c)(1), which has the limitation to federal crimes, does raise a question about whether Congress meant to parse out the federal crime limitation rather than just simply intending to refer to conduct like that in subsection (c)(1).

Both readings make sense, and while the natural construction of the language of subsection (c)(3) standing alone may support the government's view, the more plausible construction supports the defendant, rendering the statute ambiguous. *See United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (finding ambiguity in statute that could plausibly be read in two ways and made more sense when read in defendant's favor). Even if, however, as the government contends, the plain meaning of § 924(h) and (c)(3) together is clear and these provisions by their specific words are better read in the government's favor, a court may look beyond the plain meaning of a statute when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress's intention. *Thomas*, 77 F.3d at 991. That is the case here.

Elsewhere in the section, Congress has specifically pointed to the inclusion of state law crimes. For instance, in § 924(e)(2), a "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ...." Importantly, § 924(g), which was passed by Congress together with subsection (h), *see* Anti–Drug Abuse Control Act of 1988, Pub.L. No. 100–690, § 6211, 102 Stat. 4359 (1988); *McLemore*, 28 F.3d at 1163, creates additional penalties for those committing offenses in viola-

tion of "any State law relating to any controlled substance" and offenses listed in 18 U.S.C. § 1961(1), which then specifically references certain state law and federal crimes, differentiating between them. Subsection (h) lacks a specific reference to state law crimes, which Congress seemed to include elsewhere where such inclusion was intended. Because Congress could differentiate between state and federal offenses in other parts of § 924, the failure to do so with respect to crimes of violence makes § 924(h) unclear. *United States v. McLemore ("McLemore II")*, 815 F.Supp. 432, 435 (S.D.Ala.1993), *aff'd* 28 F.3d 1160 (11th Cir.1994).

Further, and importantly, the other subsections of § 924—and even the drug trafficking portion of subsection (h)—all specifically reference a federal nexus that is noticeably absent in subsection (h) as it applies to crimes of violence. Subsection (b), for instance, creates a penalty for shipping, transporting, or receiving a firearm or ammunition "in interstate or foreign commerce." Subsection (c)(1), as stated above, is limited to certain crimes that can be prosecuted in federal court. Subsection (g), passed along with subsection (h), applies to someone who travels between states to acquire or transfer a firearm. The portion of subsection (h) involving drug trafficking crimes applies to federal drug trafficking crimes only. Subsection (k) concerns the smuggling or importation of a firearm into the country. And subsection (*l*) provides a penalty for stealing a firearm that is moving in or a part of interstate or foreign commerce. Subsection (h), if read to include state law crimes of violence, thus does not fit the pattern of the rest of the statute of which it is a part.[1]

Whether § 924(h), if considered applicable to state law crimes, would be a constitutional exercise of commerce clause power is a separate matter, which the Eleventh Circuit did not need to reach in *McLemore.* *See McLemore*, 28 F.3d at 1162 n. 2. As the court of appeals suggested, however, the noticeable lack of any commerce clause based justification for why § 924(h) would apply to a state crime of violence further supports a finding of ambiguity. *See id.* at 1162, 1164. Under our federal system states possess primary authority for defining and enforcing criminal law. *United States v. Lopez*, 514 U.S. 549, 561 n. 3, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). When Congress criminalizes conduct it may effect a change in the "sensitive relation between federal and state criminal jurisdiction." *Id.* (internal quotation marks omitted). Generally, unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed that balance between federal and state criminal jurisdiction. *Bass*, 404 U.S. at 349, 92 S.Ct. 515. As noted by the Eleventh Circuit, "there is virtually no legislative history directly applicable to section 924(h)," *McLemore*, 28 F.3d at 1163, and no findings or statements regarding its federal connection, *see id.* at 1162. The only possible federal nexus involved in § 924(h) can be a requirement that the underlying crime be federal in nature. *See id.* at 1164.

Finally, the title of § 924 "Penalties," suggests that Congress meant to provide penalties for conduct that is already defined elsewhere as an offense under federal law. It seems odd that § 924(h) would

---

1. The Fifth Circuit, in the *Lopez* case that later went to the Supreme Court, noted the anomalous nature of § 924(h) if read to include state law crimes. The court pointed out that the interaction of subsections (h) and (c)(1) would have the "seemingly unusual result" that

> anyone who transfers intrastate a firearm (which has not been in interstate commerce) knowing it will be used in a crime of

violence in that state commits a federal crime even though the crime of violence is not a federal offense, but the party perpetrating the crime of violence with the firearm in that same state violates federal law *only* if the crime of violence is one "for which he may be prosecuted in a court of the United States."

*United States v. Lopez*, 2 F.3d 1342, 1358 (5th Cir.1993).

create a brand new offense with no federal connection in the midst of a section whose title suggests that it is intended solely to establish penalties for conduct that is otherwise already a federal offense. "It would be an anomaly for Congress to have intended for subsection 924(h) to have a much greater scope than the other subsections of section 924 ... without explicitly stating so." *McLemore II,* 815 F.Supp. at 435.

Looking past the ambiguous language to legislative history is little help, either. As the Eleventh Circuit indicated, the only direct remark on § 924(g) and (h), which were passed together, is the following remark by Senator Biden: " 'This section creates a new offense, punishable by imprisonment for 10 years, of traveling in interstate commerce and acquiring or transferring a firearm with the intent to commit a crime of violence or other serious federal offense including any drug offense.' " *McLemore,* 28 F.3d at 1163 (quoting 134 Cong. Rec. 17,360, 17,363 (1988)). Although this comment cannot hold much weight alone, Senator Biden's reference to crimes of violence and "other serious federal offense[s]" suggests that Congress just assumed its definition of "crime of violence" meant only crimes subject to federal prosecution. At the least, the legislative history does not indicate any intent to cover state law crimes of violence. *See McLemore II,* 815 F.Supp. at 435.

While the *McLemore* court did not reach the issue of constitutionality, I note that if § 924(h) included state law crimes as crimes of violence, the constitutionality of such an application would be seriously questioned in light of *Lopez. Lopez* recognized three broad categories of activity that Congress may regulate under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, i.e., the persons or things involved in interstate commerce; and (3) activities having a "substantial relation to interstate com-

merce." *Lopez* held that a federal offense prohibiting possession of a firearm near a school, to which the first two categories did not apply, did not have any substantial relationship to federal commerce either, and thus was unconstitutional. The act neither regulated a commercial activity nor contained a requirement that the possession be connected in any way to interstate commerce. *Id.* at 551, 115 S.Ct. 1624. The statute contained no jurisdictional element that would ensure, through case-by-case inquiry, that the firearm possession in question affected interstate commerce. *Id.* at 561, 115 S.Ct. 1624. Although Congress was not required to make formal findings that the prohibited activity had an effect on interstate commerce, the lack of any such findings meant that the Court had no clear statement of an interstate commerce connection. *See id.* at 562–63, 115 S.Ct. 1624; *see also United States v. Morrison,* 529 U.S. 598, ——, 120 S.Ct. 1740, 1751, 146 L.Ed.2d 658 (2000). The fact that the firearm itself may have moved in commerce did not save the statute; the respondent was a local student at a local school, there was no indication that he had recently moved in interstate commerce, and there was no requirement that his possession of the firearm have any concrete tie to interstate commerce. *Lopez,* 514 U.S. at 567, 115 S.Ct. 1624.

Like the statute at issue in *Lopez,* § 924(h) can only involve the third potential category for regulation, as it has no express requirement that the transfers have an interstate character or that the firearms have been in interstate commerce. *United States v. Taylor,* 897 F.Supp. 1500, 1505 (D.Conn.1995). Like the statute in *Lopez,* then, it can only be constitutional if the regulated activity substantially affects interstate commerce. *Id.*

While it can be argued that transfer of a firearm might implicate economic activity more than possession of a firearm, *see United States v. Lopez,* 2 F.3d 1342, 1354 (5th Cir.1993) (stating that acquisition of firearms is more closely related to inter-

state commerce than possession), it is nevertheless difficult to find inherent in the word "transfer" any concrete tie to interstate commerce to satisfy constitutional demands. The criminal regulation of the gift of a gun (as an exchange for consideration is not required by the statute), while perhaps somewhat more economically-related than possession, still seems more like a general police power of the sort retained by the states than a commerce clause interest, especially in light of the paucity of findings on the matter. *Compare with Morrison,* 120 S.Ct. at 1752 (describing detailed findings of Congress of relationship of Violence Against Women Act of 1994 to interstate commerce). And whether such gifts of firearms would have a *substantial* effect on interstate commerce, as *Lopez* indicates is required, *Lopez,* 514 U.S. at 560, 115 S.Ct. 1624, is highly doubted.

The only challenge to § 924(h) referenced by the parties or that I have found that addresses the commerce clause issue dealt with an underlying crime of drug trafficking, not a crime of violence. *See Taylor,* 897 F.Supp. at 1505–06.[2] While the *Taylor* court noted that actual transfer of a firearm might be more closely related to interstate commerce than possession, the court upheld § 924(h) because it

> regulates the provision of firearms to those engaged in drug trafficking offenses, which by their very nature are crimes affecting interstate commerce. In these circumstances the court holds that § 92[4](h) is a valid exercise of congressional authority under the Commerce Clause to regulate "an essential

part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated."

*Id.* at 1506 (quoting *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624). Unlike drug trafficking, crimes of violence occurring wholly within state lines—such as the attempted murder referenced in count twenty-five—are not commercial activities and cannot be considered to affect interstate commerce. *See Morrison,* 120 S.Ct. at 1754. "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id.*

The constitutional question does not have to be resolved, however. I agree with and will follow *McLemore.* I agree that § 924(h) is unclear as to whether it applies to state law crimes of violence. *McLemore* issued over six years ago, and Congress has not chosen to amend § 924(h) to resolve the ambiguity by making clear that state law crimes are included. *Compare* 18 U.S.C. § 924(h) *with* 18 U.S.C. § 924(c)(1)(A) (amended in 1998 to include possession of a firearm as a crime, following *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), *see* Criminal Use of Guns Amendments, Pub.L. No. 105–386, § 1(a)(1), 112 Stat. 3469 (1998); H.R. Rep. No. 105–344 (1997)). Such inaction further implies that Congress did not intend to include state law crimes as crimes of violence for § 924(h) and approves of the Eleventh Circuit's resolution of the matter.[3]

---

2. *United States v. Callaway,* 938 F.2d 907 (8th Cir.1991), addressed the meaning of "transfer" as used in § 924(h), which at the time was codified as 18 U.S.C. § 924(g). In 1990 former § 924(f) and (g) were redesignated as § 924(g) and (h), respectively. Crime Control Act of 1990, Pub.L. No. 101–647, § 3526(a) 104 Stat. 4829 (1990). In *Callaway,* the underlying crime of violence for purposes of current § 924(h) was armed robbery. The defendant did not challenge the indictment's reliance on a state crime, however, so the current issue was not addressed.

3. Interestingly, the House Report discussing the amendment of § 924(c)(1) indicates that the section prior to amendment provided for additional terms of imprisonment for those who use or carry a firearm during a "federal crime of violence" and that the term "federal crime of violence" is defined in § 923(c)(3), implying that Congress may very well believe that a limitation to "federal" crimes is inherent in the definition set forth in § 924(c)(3). *See* H.R.Rep. No. 105–344 at 2–3.

Thus, as the criminal statute is ambiguous, the rule of lenity requires it to be construed narrowly, resolving doubts in defendant's favor. *United States v. Bass*, 404 U.S. at 347–48, 92 S.Ct. 515; *McLemore*, 28 F.3d at 1165. The rule of lenity here requires that § 924(c) apply only to crimes of violence that may be prosecuted in federal court. *See McLemore*, 28 F.3d at 1165. As count twenty-five charges only a state law crime of violence, it fails to set forth a crime under § 924(h), the indictment on that count is fatally deficient, and this court no jurisdiction over the charge as set forth in the indictment.

**THEREFORE, IT IS ORDERED** that count twenty-five is **DISMISSED**.